**ORCA BAY SEAFOODS,**
Plaintiff–Appellant,

v.

**NORTHWEST TRUCK SALES, INC.;
Kamco, Inc., an Oklahoma Corporation,
Defendants–Appellees.**

No. 93–35285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1994.

Decided Aug. 15, 1994.

**434**

Karien L. Balluff, Young, deNormandie & Oscarsson, Seattle, WA, for plaintiff-appellant.

Gregory S. Wright, Hawkins, Jeppesen, Hoff, Bellevue, WA, for defendants-appellees.

Before: POOLE, BRUNETTI and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

■ Congress passed a law requiring true odometer disclosures on transfers of vehicles. The Secretary of Transportation wrote a regulation exempting large trucks. We hold that the regulation is invalid.

## FACTS

Orca Bay Seafoods bought a truck in which the odometer showed much less than the true mileage, so it sued the used truck dealer from which it bought the truck, Northwest Truck Sales, and the truck's previous owner, Kamco, Inc. Orca bought the truck from Northwest in 1989, which had bought it a few days earlier from Kamco. It was a 1987 Mercedes diesel weighing more than 27,500 pounds with around 126,000 miles on it. The odometer showed only about 24,000 miles when Orca purchased it.

Congress passed a law to require true odometer readings, or disclosure that actual mileage is unknown. Vehicle Information and Cost Savings Act, Pub.L. No. 92–513, 86 Stat. 961 (1972) (codified as amended at 15 U.S.C. §§ 1981–91). The Secretary of Transportation exempted transfers of trucks with gross vehicle weight ratings of more than 16,000 pounds. 15 C.F.R. § 580.6(a)(1). The magistrate judge dismissed Orca's statutory claim because the regulation exempts large trucks such as the one at issue. Orca claims that the exemption is void, because the statute does not allow for it. The question is whether this exemption was within the Secretary's power to grant. We hold that it was not—the regulation exempting large trucks is void.

## ANALYSIS

The question, whether the large truck exemption is void, is one of first impression for us. No circuit has yet decided it, and district courts are divided. *Compare Davis v. Dils Motor Co.*, 566 F.Supp. 1360, 1362–63 (S.D.W.Va.1983) (holding the exemption for large trucks invalid); *Lair v. Lewis Serv. Ctr., Inc.*, 428 F.Supp. 778, 781 (D.Neb.1977) (same) *with Mitchell v. White Motor Credit Corp.*, 627 F.Supp. 1241, 1247–50 (M.D.Tenn. 1986) (upholding the regulation). We agree with Judge Urbom's careful analysis in *Lair.*

The Vehicle Information and Cost Savings Act commands the Secretary to promulgate odometer disclosure rules for "any transferor" of "a motor vehicle":

[T]he Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

15 U.S.C. § 1988(a). The word "transfer" is defined as any change in ownership "by purchase, gift or any other means." 15 U.S.C. § 1982(5). "Any transferor" is not limited to dealers. The term "dealer" is defined separately. 15 U.S.C. § 1982(1). The terms "any transferor" and "transfer" allow for no exception for transferors of large trucks.

Nor does the term "motor vehicle" allow for an exception for large trucks. Congress distinguished "passenger motor vehicle" from "motor vehicle." 15 U.S.C. § 1901(1), (15). It defined "motor vehicle" in a way which includes large trucks:

> The term "motor vehicle" means *any* vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highways, except any vehicle operated exclusively on a rail or rails.

15 U.S.C. § 1901(15) (emphasis added). Congress told the secretary to require odometer disclosure for "any" transferor of a "motor vehicle." The word "any" and the comprehensive definition of "motor vehicle" rebuts the suggestion that transferors of large trucks may be exempted.

The Secretary of Transportation nevertheless exempted certain kinds of vehicles, among them large trucks. The administrative regulation allows transferors of some vehicles not to disclose the true odometer mileage:

> (a) A transferor or lessee of any of the following *motor vehicles* need not disclose the vehicle's odometer mileage:
>
> (1) *A vehicle having a Gross Vehicle Weight Rating ... of more than 16,000 pounds;*
>
> (2) A vehicle that is not self-propelled;
>
> (3) A vehicle that is ten years old or older; or
>
> (4) A vehicle sold directly by the manufacturer to any agency of the United States in conformity with contractual specifications.
>
> (b) A transferor of a new vehicle prior to its first transfer for purposes other than resale need not disclose the vehicle's odometer mileage.
>
> (c) A lessor of any of the vehicles listed in paragraph
>
> (a) of this section need not notify the lessee of any of these vehicles of the disclosure requirements of § 580.7.

49 C.F.R. § 580.6 (emphasis added).

The Secretary had a rational policy reason for the large truck exemption. He determined that buyers of large trucks use the maintenance history, not the odometer, as a guide to its expected useful life and maintenance requirements.

> A new section, § 580.[6], has been added in response to a number of comments that objected to the application of the requirements to categories of vehicles for which the odometer is not used as a guide to value. Buses and large trucks, for example, are routinely driven hundreds of thousands of miles, and their maintenance records have traditionally been relied on by buyers as the principal guide to their condition. The NHTSA is in agreement with the position taken by Freightliner, White, and the National Association of Motor Bus Operators, and has therefore created an exemption for larger vehicles. The exemption applies to vehicles having gross vehicle weight ratings of more than 16,000 pounds.
>
> A second category of exempted vehicles has been created for antique vehicles, whose value is a function of their age, condition, and scarcity, and for which the odometer mileage is irrelevant. A third exempt category consists of vehicles that are not self-propelled, such as trailers, most of which are not equipped with odometers.
>
> Several vehicle manufacturers stated that the proposal would require them to give disclosure statements to their distributors and dealers, and that such a requirement would be both burdensome and pointless. Upon consideration of the na-

ture of manufacturer-dealer transactions, it has been decided to exempt transfers of new vehicles that occur prior to the first sale of the vehicle for purposes other than resale.

38 Fed.Reg. 2978 (1973).

But rationality is not enough. The Secretary needed authority. The large truck regulation must fall because Congress did not delegate to the Secretary of Transportation the power to exempt large trucks.

The truck seller argues that the Secretary's reasoning is consistent with the purpose of the statute. This may be so. The express statutory purpose is protection of buyers' reliance on odometers:

The Congress hereby finds that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.

15 U.S.C. § 1981. Kamco makes the logical argument that if people do not rely on odometers when they purchase large trucks, then protection of such reliance by the odometer statute would be purposeless.

We venture no judgment on whether the Secretary's judgment about who relies on odometers is correct, or whether exemptions should be granted for vehicles for which buyers generally do not rely on odometer readings. It is enough that Congress did not delegate power to grant the large truck exemption. Congress could, and did, make a contrary judgment, and its policy reason was also rational. Maybe some buyers of used trucks do look at the odometers to see how much the trucks have been driven. Maybe some buyers of ten year old cars disagree with the Secretary's judgment that, for example, the value of a 1983 Ford Escort depends solely on its "age, condition, and scarcity, and ... the odometer mileage is irrelevant." Despite our skepticism about the breadth of the "antique" car exception, we do not decide on the validity of subsections of the regulations not before us in this case.

■ The truck seller's argument applies this mode of construction:

1) the statute says A;

2) its purpose is B;

3) C would work better than A to accomplish B;

4) construe the statute to mean C, even if C contradicts A.

This approach is necessarily wrong. It is one thing to construe the statutory language "to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir.1992). It is quite another to treat the purpose, and not the operative words of the statute, as the law. In this case, an attributed purpose of not exempting large trucks is rational. We would be writing a different statute, not just construing it, by "treating the words as having no meaning and looking instead to the values underlying the language to be construed so that we can create law effectuating those values." *United States v. Martinez–Cano*, 6 F.3d 1400, 1405 (9th Cir.1993) (dissent).

■ Deference to administrative agencies under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) will not save the regulation. *Chevron* deference only operates if there is ambiguity or silence in the statute:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the mat-

ter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

In the statute at issue, Congress left no gap, no silence, no ambiguity, so "we must give effect to the plain language that Congress chose." *United States v. Geyler,* 949 F.2d 280, 283 (9th Cir.1991). The regulation is contrary to the will of Congress as expressed in the governing statute.

If we were to defer to the Secretary's judgment about the wisdom of exempting large trucks, despite Congress's determination not to exempt them, we would in effect allow lobbyists to appeal from the legislative to the executive branch after a bill has become a law. *Chevron* deference applies where "Congress has explicitly left a gap for the agency to fill," which is an "express delegation," or "the legislative delegation to an agency on a particular question is implicit." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782. The executive branch is not a tribunal to which affected interests can appeal adverse legislative judgments. For all we know, the same trucking interests mentioned by the Secretary in his explanation made the same arguments to Congress, lost, and then asked the Secretary to undo what they saw as a legislative misjudgment. Congress might write an insufficiently nuanced law and over regulate an industry. It has the power to make that kind of policy mistake. We do not intimate that Congress made any mistake. Congress may have been more responsive to the interests of vehicle buyers and less to vehicle sellers than the Secretary, and better balanced their differing interests. Whether the policy judgment was right or wrong, Congress made it, and did not delegate it to the Secretary to make, so that is the end of the matter.

REVERSED and REMANDED.