**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GILBERT R. SUITER, individual,

      Plaintiff-Appellee-
      Cross-Appellant,

v.

MITCHELL MOTOR COACH
SALES, INC., a Florida corporation,

      Defendant-Appellant,

  and

ROBERT E. DESBIEN; NORMA J.
DESBIEN,

      Defendants,

v.

BLUE BIRD BODY COMPANY,
INC., a Georgia corporation,

      Third-Party-Defendant -
      Appellee.

No. 96-5154
No. 96-5159

Appeal from the United States District Court
for the N. District of Oklahoma
(D.C. No. 93-C-815-H)

James W. Tilly, Tilly & Ward, Tulsa, Oklahoma (Craig A. Fitzgerald with him on the briefs), for Defendant-Appellant.

Robert E. Bacharach, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Plaintiff-Appellee, Cross-Appellant.

Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, LLP, Atlanta, Georgia, (Thomas W. Rhodes, Smith, Gambrell & Russell, LLP, Atlanta, Georgia, and James M. Sturdivant and Timothy A. Carney, Gable, Gotwals, Mock & Schwabe, Tulsa, Oklahoma, with him on the briefs), for Third-Party-Defendant - Appellee.

Before **PORFILIO, LUCERO,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

Gilbert Suiter ("Suiter") brought this action against Mitchell Motor Coach Sales, Inc. ("Mitchell"), Norma and Robert Desbien, and Blue Bird Body Company, Inc. ("Blue Bird"), alleging violations of the Motor Vehicle Information and Cost Savings Act ("Odometer Act"), 49 U.S.C. §§ 32701-32711.[1] The Odometer Act requires any person transferring ownership of a motor vehicle

---

[1] As originally enacted in 1972, the Odometer Act was codified at 15 U.S.C. §§ 1981-1991. In 1994, Congress repealed these sections and recodified the Act at 49 U.S.C. §§ 32701-32711. Although the recodification included some changes to the statutory language, Congress did not intend to substantively change the law. *See* Act of July 5, 1994, Pub. L. No. 103-272, 108 Stat. 745. In 1996, Congress amended the disclosure requirements of the Odometer Act. *See* Act of Oct. 11, 1996, Pub. L. No. 104-287, § 5(62), 110 Stat. 3388, 3394. Like the 1994 amendments, the 1996 amendments were not intended to effect substantive change. *See id*., 110 Stat. at 3388. This opinion will therefore cite to the current version of the Odometer Act.

to give the transferee an accurate, written disclosure of the odometer reading or, if the transferor knows the odometer reading is not correct, a statement that the actual mileage is unknown. *See* 49 U.S.C. § 32705(a). If the transferor, with intent to defraud, fails to comply with these requirements, the transferor is subject to suit by the transferee and may be liable for treble damages or $1500, whichever is greater. *See id.* § 32710.

Suiter originally brought suit against Mitchell, a motor coach dealership, alleging that it fraudulently provided him with an inaccurate odometer statement when he purchased a Blue Bird Motor Coach ("Coach") from the dealership. Suiter later added as defendants the Desbiens, who had consigned the Coach to Mitchell. Mitchell filed cross claims against the Desbiens and impleaded Blue Bird, which had replaced the Coach's odometer. Suiter thereafter filed a claim against Blue Bird.

The district court granted Blue Bird's motion for summary judgment, dismissing it from the case. Suiter's claims against Mitchell proceeded to trial.[2] A jury found in favor of Suiter and awarded him damages of $26,286. The district court trebled the damages and ordered judgment against Mitchell for

---

[2]Prior to trial, Robert Desbien died. His estate was substituted as a party. During a pre-trial conference, counsel for Mr. Desbien's estate informed the parties and the court that his estate had no assets, and his estate subsequently defaulted by failing to appear at another scheduled pre-trial conference. Norma Desbien filed for bankruptcy and therefore did not participate in the trial.

$78,858. The district court also awarded Suiter attorney fees of $72,454.75 and prejudgment interest.[3]

Mitchell appeals several of the district court's rulings. Suiter cross-appeals the district court's grant of summary judgment to Blue Bird. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms on all issues with the exception of the award of attorney fees. On that issue, we reverse and remand.

## I. BACKGROUND

Robert and Norma Desbien purchased the Coach in August 1988. At the time of their purchase, the odometer showed 30,091 miles. A few months later the speedometer and odometer malfunctioned, and the Desbiens took the Coach to Blue Bird for repair. Blue Bird replaced the old odometer, which then showed approximately 42,000 miles, with a new odometer showing zero miles. The new odometer therefore reported mileage which was approximately 42,000 miles less than the actual mileage of the Coach.

Four years later, in September 1992, Mitchell agreed to sell the Coach for the Desbiens on a consignment basis. The parties agreed that Mitchell would sell the Coach for no less than $125,000 and that Mitchell could keep any excess over that amount as its commission. At the time of the consignment agreement, the

---

[3]The district court also entered default judgment in favor of Suiter and Mitchell against the estate of Mr. Desbien for the damages, attorney fees, and prejudgment interest.

Coach's odometer showed 46,520 miles. Mr. Desbien provided Mitchell with an odometer statement attesting that the odometer reading was, to the best of his knowledge, the actual mileage of the vehicle.

Suiter subsequently purchased the Coach from Mitchell for $150,000. Mitchell executed another odometer statement, stating that to the best of its knowledge the actual mileage of the Coach was 46,520 miles. A few months after purchasing the Coach, Suiter reviewed the vehicle's service records, which were kept in a box in the Coach, and discovered the odometer had been replaced by Blue Bird and that the odometer reading was consequently incorrect. In September 1993 he filed this action.

Both Blue Bird and Mitchell moved for summary judgment. The district court granted Blue Bird's motion, concluding there was no evidence Blue Bird had acted with the requisite intent to defraud. The district court denied Mitchell's motion, finding a material issue of fact existed with respect to Mitchell's intent. A jury subsequently found in favor of Suiter and against Mitchell.

Mitchell appeals, arguing the district court erred (1) by not rendering judgment in favor of Mitchell, when Mitchell was exempt from the odometer reporting requirements under the regulations; (2) by not rendering judgment in favor of Mitchell, when there was no evidence Mitchell acted with intent to defraud; (3) by erroneously instructing the jury as to the degree of culpability

necessary to support liability under the Odometer Act; (4) by granting summary judgment in favor of Blue Bird; (5) by not granting Mitchell a new trial; (6) by awarding Suiter attorney fees of $72,454.75; and (7) by awarding Suiter prejudgment interest. Suiter cross appeals, also arguing the district court erred by granting summary judgment in favor of Blue Bird.

## II. DISCUSSION

### A. Exemption

Mitchell first argues that because it was exempt under the regulations from providing Suiter with an odometer statement, the district court erred by not granting its motion for judgment as a matter of law. Mitchell specifically relies on the exemption for transferors of vehicles with a gross vehicle weight rating ("GVWR")[4] in excess of 16,000 pounds. *See* 49 C.F.R. § 580.17(a)(1). Suiter argues Mitchell waived the exemption defense because it failed to plead the exemption as an affirmative defense. In the alternative, Suiter argues the exemption is invalid.

Mitchell initially claimed that it was exempt from the odometer disclosure requirements in a motion for summary judgment filed on the eve of trial. The parties and the district court agreed to treat the motion as a motion for judgment

---

[4]"Gross vehicle weight rating" is defined as "the value specified by the manufacturer as the loaded weight of a single vehicle." 49 C.F.R. § 571.3(b).

as a matter of law. After Suiter rested, at the close of evidence, and again after the jury rendered its verdict in favor of Suiter, Mitchell moved for judgment as a matter of law, relying on the exemption. The district court denied the motions based on its conclusion that the exemption was invalid. During these proceedings, Suiter argued the Secretary was without authority to promulgate the regulatory exemption and that the exemption was therefore invalid. Suiter never argued, however, that Mitchell had waived its exemption defense by failing to plead it in the answer.

A claim of exemption is an affirmative defense which must be specifically pleaded. *See Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir. 1976). Failure to raise the defense in a responsive pleading, however, does not necessarily result in waiver. Federal Rule of Civil Procedure 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they [are] treated in all respects as if they had been raised in the pleadings." The parties in this case agreed to treat the exemption defense as a legal issue[5] within a

---

[5]On appeal, Suiter argues Mitchell cannot rely on the exemption because it failed to introduce evidence during trial concerning the weight of the Coach. In its motion for summary judgment, Mitchell attached a "certificate of origin" for the vehicle, which states the shipping weight of the Coach is 40,100 pounds. The certificate of origin is part of the record on appeal. Because the parties agreed to treat the exemption defense as a legal issue and because Suiter never challenged the applicability of the exemption based on the vehicle's weight, Mitchell had no reason to introduce evidence during trial concerning the vehicle's weight. This court therefore rejects Suiter's argument.

motion for judgment as a matter of law. Suiter was fully aware of Mitchell's intent to raise the issue and was given the opportunity to present his arguments in a written response to Mitchell's renewed motion for judgment as a matter of law. *Cf. Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) ("The test of consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment."). By arguing the applicability of the exemption on the merits, Suiter consented to the litigation of the issue. *See, e.g.*, *Ringuette v. City of Fall River*, No. 96-1107, 1998 WL 278512, at \*3-\*4 (1st Cir. June 4, 1998); *United States v. Banks*, 115 F.3d 916, 918 n.4 (11th Cir. 1997), *cert. denied*, 118 S. Ct. 852 (1998); *Bailey v. Northern Ind. Pub. Serv. Co.*, 910 F.2d 406, 412 (7th Cir. 1990). We therefore address the merits of Mitchell's argument that it was exempt from the odometer disclosure requirements.

The Odometer Act requires "a person transferring ownership of a motor vehicle" to give the "transferee" an accurate, written disclosure of the vehicle's odometer reading or, if the transferor knows the odometer reading is incorrect, a written disclosure that the actual mileage is unknown. 49 U.S.C. § 32705(a)(1). The term "motor vehicle" is defined broadly as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." *Id.*

-8-

§ 32101(7). The Act further provides that regulations prescribed by the Secretary of Transportation ("Secretary") shall provide the "way in which information is disclosed and retained." *Id.* § 32705(a)(1).

Shortly after the Act was passed, the Secretary, through the National Highway Traffic Safety Administration, promulgated regulations relating to the disclosure of odometer information. The Secretary exempted transferors of certain classes of vehicles from the odometer disclosure requirements.[6] *See* 49 C.F.R. § 580.17. At issue in this case is the regulatory exemption for vehicles with a GVWR of more than 16,000 pounds. *See id.* § 580.17(a)(1).

Mitchell argues it was exempt from the odometer disclosure requirements because the Coach weighs in excess of 16,000 pounds. In its brief on appeal, however, Mitchell acknowledges that the Ninth Circuit and two federal district courts have concluded the large-vehicle exemption is invalid as an unauthorized exercise of the Secretary's authority. *See Orca Bay Seafoods v. Northwest Truck*

---

[6]Specifically, the regulations exempt transferors of the following classes of vehicles from the odometer disclosure requirements: (1) vehicles with a gross vehicle weight rating in excess of 16,000 pounds; (2) vehicles that are not self-propelled; (3) vehicles that are ten years old or older; and (4) certain vehicles sold directly by a manufacturer to an agency of the United States. *See* 49 C.F.R. § 580.17(a). In addition, a "transferor of a new vehicle prior to its first transfer for purposes other than resale need not disclose the vehicle's odometer mileage." *Id.* § 580.17(b).

In 1997, the exemption regulations were repromulgated and redesignated from 49 C.F.R. § 580.6 to 49 C.F.R. § 580.17. *See* 62 Fed. Reg. 47,765 (1997).

*Sales, Inc.*, 32 F.3d 433 (9th Cir. 1994); *Davis v. Dils Motor Co.*, 566 F. Supp. 1360, 1362-63 (S.D. W. Va. 1983); *Lair v. Lewis Serv. Ctr., Inc.*, 428 F. Supp. 778 (D. Neb. 1977). *But see Mitchell v. White Motor Credit Corp.*, 627 F. Supp. 1241, 1247-50 (M.D. Tenn. 1986) (upholding exemption). Moreover, after briefing was completed in this case, this court, as well as the Seventh Circuit, held that a different exemption under the same regulation was invalid. *See Lee v. Gallup Auto Sales, Inc.*, 135 F.3d 1359, 1361-62 (10th Cir. 1998); *Diersen v. Chicago Car Exch.*, 110 F.3d 481, 486-87 (7th Cir.), *cert. denied*, 118 S. Ct. 178 (1997).

In *Lee*, this court held the regulatory exemption for transferors of vehicles ten or more years old was invalid. *See* 135 F.3d at 1361-62. The court, expressly relying on the reasoning in *Diersen* and *Orca Bay*, concluded the Secretary was without authority to exempt such vehicles from the disclosure requirements. *See id.* The court in *Diersen* determined "the text of the Odometer Act does not even suggest—much less explicitly state—a legislative intent to exempt entire classes of vehicles from the disclosure requirements of the Act." 110 F.3d at 486. In *Orca Bay*, the court noted that although the Secretary may have had a rational policy reason for exempting large vehicles from the Act's requirements, "rationality is not enough. The Secretary needed authority." 32 F.3d at 436. Because the Odometer Act "left no gap, no silence, no ambiguity," the court

concluded it was obligated to give effect to the plain language of the statute. *Id.*
at 437. Both the *Diersen* and *Orca Bay* courts thus concluded that no deference
was due the Secretary's construction of the Odometer Act because the Act was
not ambiguous or silent regarding the Secretary's authority to promulgate the
exemptions. *See Diersen*, 110 F.3d at 486 (citing *Chevron, U.S.A., Inc. v. Natural
Resources Defense Council, Inc.*, 467 U.S. 837 (1984)); *Orca Bay*, 32 F.3d at
436-37 (same).

Although this court's decision in *Lee* held only the ten-year regulatory
exemption invalid, its reasoning applies just as forcefully to the exemption for
large vehicles. The plain language of the Odometer Act does not authorize the
Secretary to promulgate the regulatory exemptions. This court therefore
concludes the exemption for transferors of vehicles with a GVWR in excess of
16,000 pounds is invalid.[7] Consequently, we reject Mitchell's argument that it

---

[7]We note that in September 1997, the Secretary repromulgated the
regulatory exemptions, citing as additional authority the Department of
Transportation and Related Agencies Appropriations Act of 1997 ("1997
Appropriations Act"). *See* 62 Fed. Reg. 47,763 (1997). In the 1997
Appropriations Act, Congress stated:

> Notwithstanding any other provision of law, the Secretary may
> use funds appropriated under this Act, or any subsequent Act, to
> administer and implement the exemption provisions of 49 CFR 580[]
> and to adopt or amend exemptions from the disclosure requirements
> of 49 CFR part 580 for any class or category of vehicles that the
> Secretary deems appropriate.

Pub. L. No. 104-205, § 332, 110 Stat. 2951, 2974 (1996). The Secretary
apparently interpreted the 1997 Appropriations Act as merely clarifying its

was exempt under the regulations to the Odometer Act from providing Suiter with

an odometer statement and that the district court therefore erred by not granting

its motion for judgment as a matter of law.[8]

---

authority under the Odometer Act rather than effecting a substantive change in the law. *See* 62 Fed. Reg. 47,763, 47,763 (1997) (characterizing 1997 Appropriations Act as "affirming the agency's exemption authority").

Although both *Diersen* and *Lee* were decided after Congress passed the 1997 Appropriations Act, neither case discussed the effect, if any, of the Act on the Secretary's authority to promulgate the regulatory exemptions. This court concludes the 1997 Appropriations Act does not affect our holding that the large vehicle exemption was invalid as of 1992, the date of the relevant transaction in this case. As previously discussed, the Odometer Act is unambiguous in that it does not grant the Secretary authority to promulgate the exemptions. Thus, the 1997 Appropriations Act did not "clarify" existing law. *Cf. United States v. Papia*, 910 F.2d 1357, 1362 (7th Cir. 1990) (stating that later Congress' intent to clarify, rather than change, statute is evidence of that Congress' view of original statute's meaning and holding that such congressional intent may not override plain language of statute); *Johnson v. United States Dep't Hous. & Urban Dev.*, 911 F.2d 1302, 1308-09 (8th Cir. 1990) (noting that if statute is ambiguous, clarifying amendment is persuasive evidence of congressional intent, but recognizing that such amendment cannot override clear intent of enacting Congress); *see also* 1A Norman J. Singer, Sutherland Statutory Construction § 22.30, at 267-68 (5th ed. 1991) ("An amendment of an unambiguous statute indicates a purpose to change the law . . . ."). Consequently, the provisions of the 1997 Appropriations Act may not be applied retroactively to grant the Secretary authority to exempt transferors of certain classes of vehicles from the odometer disclosure requirements. *Cf. Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1436 (10th Cir. 1997) ("[A]bsent a clear indication that Congress intended the Amendments merely to clarify the proper interpretation of its prior Act, we consider the Amendments to implement a change in the Act, and we apply them only to events occurring after the Act's effective date."). This court expresses no opinion on the prospective effect of the 1997 Appropriations Act on the Secretary's authority to provide for the regulatory exemptions.

[8]This court also rejects Mitchell's argument that the validity of the regulatory exemption for large vehicles is irrelevant for purposes of determining its liability under the Odometer Act. Mitchell argues that under §§ 32705 and

## B.    Intent to Defraud

Mitchell next argues that because there was no evidence it acted with intent to defraud, the district court erred by not granting its motion for judgment as a matter of law.  This court reviews de novo the district court's denial of Mitchell's motion.  *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1483 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 1468 (1997).  We must determine whether, viewing the evidence in the light most favorable to Suiter, "the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion."  *Id.* (internal quotations omitted).  Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no

32710 of the Act, it is only liable if it fails to comply with the regulations prescribed by the Secretary.  Because the Secretary exempted transferors of large vehicles from the odometer disclosure requirements, Mitchell asserts there was no regulation affirmatively requiring it to provide an odometer statement.  Thus, Mitchell argues, because it did not violate any regulation, it could not have violated the Odometer Act.

We find this argument unconvincing.  The Odometer Act clearly evidences Congress' intent that all transferors of motor vehicles comply with the odometer disclosure provisions.  The Secretary was instructed to promulgate procedural regulations setting forth the "way in which information is disclosed and retained." 49 U.S.C. § 32705(a)(1).  The Secretary was not authorized to exempt transferors of certain classes of vehicles from the Act's requirements.  Because the exemption for large vehicles was invalid, Mitchell had to comply with the general disclosure regulation.  It failed to comply with that regulation, rendering it liable under the Act.  Moreover, we note that Mitchell did provide Suiter with an odometer statement and therefore did not actually rely upon the exemption.  In fact, Harvey Mitchell, Mitchell's president, testified that it was his understanding that as a dealer he was required to execute an odometer statement for every vehicle he sold.

-13-

reasonable inferences supporting the party opposing the motion." *Id.* (internal quotations omitted).

In *Haynes v. Manning*, 917 F.2d 450 (10th Cir. 1990) (per curiam), this court addressed the standard for determining whether a transferor acted with intent to defraud under the Odometer Act. The court concluded the transferee need not show the transferor acted with the specific intent to deceive. *See* 917 F.2d at 453. Rather, the transferee need only show "reckless disregard" by the transferor. *Id.* Importantly, the court concluded that the Odometer Act "imposes an affirmative duty on automobile dealers to discover defects." *Id.* The court then stated:

> A transferor of a vehicle may be found to have intended to defraud if he had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner and nevertheless failed to take reasonable steps to determine the actual mileage.

*Id.* Under this standard, a transferor need not have actual knowledge that the odometer statement was false before liability may be imposed. Rather, intent to defraud may be inferred if a transferor lacks such knowledge only because he "'display[ed] a reckless disregard for the truth'" or because he "'clos[ed] his eyes to the truth.'" *Id.* (quoting *Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248, 1253-54 (8th Cir. 1983)).

-14-

In support of its argument that the evidence was insufficient to establish intent to defraud, Mitchell asserts that the standard in *Haynes* must be distinguished from mere negligence. According to Mitchell, the transferor must have some subjective knowledge that the odometer mileage is inaccurate or must fail to explore mileage verification methods which the transferor subjectively knows to explore before liability may be imposed under the Odometer Act. Mitchell argues that because there was no evidence that it had subjective knowledge that the Coach's odometer reading was incorrect and because "there was nothing Mitchell knew to inspect that would have revealed a discrepancy," it cannot be held liable.

Suiter called two witnesses from the motor coach industry, Jim Swingholm and Larry Breniman, who testified about the steps they take to verify the actual mileage of a coach before offering it for sale. Both witnesses testified that they first inspect the coach, looking at such things as the general condition of the coach, the amount of paint worn off the brake pedal, the condition of the brake pads, the tires, the amount of paint and undercoating that has worn off the undercarriage, and the condition of the interior. The witnesses further testified that they then compare the reading from the coach's engine hour meter to the

odometer reading to ensure the relationship between the two is reasonable.[9] If the numbers appear out of sync, they discuss the matter with the owner and, if the matter is not resolved, they call the manufacturer to see whether it changed the speedometer on the vehicle. According to Mr. Swingholm, Blue Bird coaches have a history of speedometer failure.[10] The witnesses testified that in their experience, these odometer verification steps are commonly used in the industry.

Mitchell also presented two witnesses from the motor coach industry, Larry Cooper and Paul Everett. The witnesses disputed the reliability of the engine hour meter test and testified that they do not perform the test in evaluating the accuracy of an odometer reading. In addition, the witnesses stated they would not contact the manufacturer to verify the mileage unless there was some highly unusual problem. Mr. Cooper further expressed doubt about whether he could even get repair information from Blue Bird because he was not an authorized Blue Bird dealer. Both witnesses, however, testified that they do inspect a coach to determine the coach's value and to check the accuracy of the odometer reading. Mr. Cooper testified that he looks at such things as the wear on the brake and

---

[9]An engine hour meter records the number of hours the engine is running, including idle time. By multiplying the reading from the engine hour meter by a multiplier that reflects the general mileage per hour the vehicle travels, reduced for idle time, the vehicle's mileage can be roughly estimated. The witnesses testified that dealers typically use multipliers ranging from 40 to 50.

[10]Michael Dykstra, a Blue Bird dealer, also testified that Blue Birds manufactured during the 1980s have a history of odometer failure.

accelerator pedals, the carpet in front of the driver, the steering wheel, the door hinges, the tires, and the engine compartment. Mr. Everett testified that his dealership checks items such as the paint, tires, carpeting, and the engine, though he questioned whether such an inspection could reveal mileage discrepancies.[11]

Harvey Mitchell, a shareholder, officer, and director of Defendant Mitchell,[12] testified that when he receives a coach for resale, he inspects the coach to determine its value and also to get a feel for the mileage. As Suiter's counsel pointed out, however, Mr. Mitchell's testimony at trial was contradicted by his earlier deposition, during which the following exchange occurred:

> Question: And you didn't make any efforts—again this is just sort of to tie up your earlier testimony—you made no efforts at all to verify that the reading on the odometer reflected the true mileage on the coach; right?
> Answer: No. I wouldn't know what to do.

Although Mr. Mitchell testified that he knows what the engine hour meter is designed to do, he stated that he had never heard of multiplying the engine hour meter reading by a multiplier to estimate the number of miles the vehicle has traveled. Mr. Mitchell additionally stated he was unsure whether he could obtain

---

[11]Mr. Everett also testified, however, that "when you run a business for 20 years and you sell a thousand units a year and you have only had one case of faulty odometer, you can just picture yourself how much value you put on it."

[12]Mr. Mitchell has been in the motor coach business since 1974. Mitchell was the number one seller of Blue Birds in the country in 1986, the year the Coach was manufactured. Mitchell was not an authorized Blue Bird dealer in 1992, the year Suiter purchased the Coach.

repair information from Blue Bird since he was no longer an authorized dealer. While Mr. Mitchell testified there was a box in the Coach containing the owner's manual and other documents, he further testified that, in accordance with his general practice, he did not look through any of the papers.[13] Finally, Mr. Mitchell testified that Mark Molder, an employee of Mitchell, is in charge of preparing odometer statements and that all he does is look at the odometer reading and interview the owner.

Mr. Molder confirmed that in preparing an odometer statement, he does nothing more than obtain the odometer reading from the vehicle and discuss the statement with the owner. Mr. Molder further testified that he does not personally inspect the vehicle in an effort to discover odometer discrepancies and that he did not know whether Mr. Mitchell's inspection was intended to verify the odometer reading. When asked whether there was anyone at Mitchell who does perform such an inspection, Mr. Molder answered, "No."

John Chester, a mechanic for thirty-eight years, also testified at the trial. Mr. Chester did numerous repairs on the Coach soon after Suiter purchased it. He testified that based on his experience, the majority of repairs were highly unusual for a coach with approximately 46,000 miles, but were more in line for a coach

---

[13]Suiter testified that he found repair records in the box indicating that the odometer had been replaced.

with approximately 96,000 miles. He also testified that the engine parts showed "extremely more mileage" than 46,000 miles. In addition, Mr. Swingholm testified that based on his inspection of the Coach in 1994, two years after Suiter purchased it, the Coach had traveled more miles than the mileage recorded on the odometer.[14]

This court agrees with Mitchell's assertion that simple negligence is not sufficient to impose liability under the Odometer Act. *See, e.g.*, *Diersen*, 110 F.3d at 488. As stated in *Haynes*, the transferor must have at least acted with reckless disregard to be held civilly liable under the Act. *See* 917 F.2d at 453. Applying this standard, we conclude that Mitchell has failed to establish the evidence points only in its favor and is susceptible to no reasonable inferences supporting Suiter. *See McKenzie*, 94 F.3d at 1483. To the contrary, there is sufficient evidence from which the jury could have reasonably found that Mitchell acted with reckless disregard concerning the accuracy of the Coach's odometer statement.

Viewed in the light most favorable to Suiter, the evidence shows that Mitchell relied solely on the assertions of Mr. Desbien to ascertain whether the

---

[14]Specifically, Mr. Swingholm stated that the engine hour meter reading was inconsistent with the recorded mileage, the paint was worn off the undercarriage and the brake pedal, and the rubber was worn off the edge of the throttle pedal.

Coach's odometer reading was correct. Mitchell did nothing to independently verify the accuracy of the odometer reading. Moreover, the evidence shows that had Mitchell taken some affirmative step to verify the mileage, it would likely have discovered the discrepancy. For example, the mechanic who repaired the Coach testified that the Coach's general mechanical condition was not consistent with the mileage recorded on the odometer. Likewise, the dealer who inspected the Coach testified that the general wear and tear of the Coach indicated it had traveled more miles than the odometer indicated. Had the engine hour meter test been performed, it would have alerted Mitchell to the discrepancy. Further, if Mitchell had checked with Blue Bird and Blue Bird had disclosed the Coach's repair history, it would have discovered that Blue Bird had previously replaced the Coach's odometer. In addition, if Mitchell had looked through the repair records kept in the Coach, it would have likely discovered the mileage discrepancy.

While we express no opinion as to the necessity or adequacy of any one method to determine the accuracy of an odometer reading, we conclude an automobile dealer cannot escape liability under the Odometer Act by relying solely on the odometer reading and the assertions of the previous owner. As this court stated in *Haynes*, dealers have an affirmative duty to discover odometer defects. *See* 917 F.2d at 453. The failure to take any steps to independently

verify the accuracy of an odometer reading constitutes reckless disregard for the purposes of the Act. To hold otherwise would strip the Odometer Act of any meaning. *Cf. Heffler v. Joe Bells Auto Serv.*, 946 F. Supp. 348, 352 (E.D. Pa. 1996) ("[W]here a defendant could reasonably conclude, upon inspection of a vehicle, that the mileage on the odometer of the vehicle was incorrect, the defendant has a duty to inform the potential purchaser that the actual mileage of the vehicle is unknown."); *Aldridge v. Billips*, 656 F. Supp. 975, 978-79 (W.D. Va. 1987) ("Mere reliance on the odometer reading, in the face of other readily ascertainable information from the title and the condition of the truck constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law."). This court therefore rejects Mitchell's argument that because there was no evidence it acted with intent to defraud, the district court erred by denying its motion for judgment as a matter of law.[15]

---

[15]Mitchell also asserts that the district court's default judgment in its favor against Mr. Desbien's estate is inconsistent with a finding that it acted with intent to defraud. Relying on this court's opinion in *Haynes v. Manning*, 917 F.2d 450, 454 (10th Cir. 1990) (per curiam), Mitchell asserts that a transferor who knowingly violates the Odometer Act may not recover from a previous transferor. Mitchell argues that by entering judgment in its favor, the district court necessarily found it did not knowingly violate the Odometer Act and, consequently, there can be no inference that it acted with intent to defraud. In entering a default judgment against Mr. Desbien's estate in favor of Mitchell, the district court concluded the evidence adduced at trial showed that Mr. Desbien violated the Odometer Act when he transferred the Coach to Mitchell and failed to disclose that the mileage registered on the odometer was incorrect. The record on appeal does not show that in entering the default judgment, the district court

## C.    Jury Instructions

Mitchell next argues the district court erroneously instructed the jury as to

the degree of culpability required for liability under the Odometer Act.  The

district court instructed the jury as follows:

> The second element of Plaintiff's claim requires him to prove,
> by a preponderance of the evidence, that Mitchell acted with intent to
> defraud.  "Intent to defraud" is defined under the Odometer Act as
> acting either with an actual intent to deceive or to cheat or with
> reckless disregard for the truth.  Recklessly means wantonly, with
> indifference to the consequences.  The federal odometer law imposes
> an affirmative duty on motor vehicle dealers to discover defects.  If
> you find that Mitchell had reason to know that the mileage on the
> coach was more than the mileage reflected on the odometer statement
> given to Mr. Suiter and that, nevertheless, Mitchell failed to take
> reasonable steps to determine the actual mileage, then you may find
> that Mitchell acted with an intent to defraud Mr. Suiter.  In other
> words, if you find that Mitchell displayed a reckless disregard for the
> truth, then you may infer that it acted with the intent to defraud Mr.
> Suiter.  However, you are instructed that you may not infer an intent
> to defraud from simple negligence.

After the jury began its deliberations, it sent a note to the trial judge stating:

"[T]he closing sentence seems to give a counter to what would be considered an

---

actually considered the issue and concluded, in contrast to the jury verdict, that
Mitchell did not act with intent to defraud.  In fact, the district court's refusal to
enter judgment as a matter of law in favor of Mitchell belies any such assertion.
This court therefore rejects Mitchell's argument that the district court's entry of a
default judgment in its favor necessarily negates the jury's finding that Mitchell
acted with the requisite intent to defraud.
    Mitchell additionally argues that it could not "have acted with intent to
defraud if Blue Bird did not have such intent, when Blue Bird's conduct was more
culpable than Mitchell's."  We reject this argument as well.  Blue Bird's conduct
is irrelevant to the question of whether Mitchell acted with intent to defraud.

'affirmative duty' . . . . The term in question is 'simple negligence.' Can you provide examples and/or definition of simple negligence." The judge responded: "One example would be making an error in filling out the odometer statement."[16]

Mitchell argues the district court should have instructed the jury as to the definition of negligence and the difference between reckless disregard and negligence. Mitchell contends the court's failure to do so, coupled with its "simplistic" example of negligence in response to the jury note, necessitates reversal. Suiter asserts that Mitchell failed to timely object to the instructions and that this court must therefore review the district court's instructions for plain error.

This court reviews a district court's refusal to give a jury instruction for abuse of discretion. *See York v. AT&T Co.*, 95 F.3d 948, 953 (10th Cir. 1996). We review de novo, however, the question of whether the instructions, taken as a whole, properly conveyed the applicable law and focused the jury on the relevant inquiry. *See id.* Reversal based on plain error is appropriate only if the instructions are "'patently plainly erroneous and prejudicial.'" *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 614 n.6 (10th Cir. 1984) (quoting *Moe v. Avions Marcel Dassault-Breguet Aviation*, 727 F.2d 917, 924 (10th Cir. 1984)).

---

[16]This example was taken from the unpublished Tenth Circuit order and judgment *Lavery v. R-K Leasing*, No. 93-4021, 1994 WL 55567 (10th Cir. Feb. 24, 1994).

This court need not decide whether Mitchell properly objected to the instructions and whether the more stringent plain error standard therefore applies because even under the more lenient standard of review, we conclude there was no error. As this court has recognized, "'[n]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law.'" *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1424 (10th Cir. 1993) (quoting *Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir. 1984)). To find Mitchell liable under the Odometer Act, the jury was required to find that it acted with reckless disregard. The district court's definition of that term was taken almost verbatim from this court's opinion in *Haynes*. *See* 917 F.2d at 453. Although Mitchell urges otherwise, we do not find the language in *Haynes* inherently misleading. Further, the district court's response to the jury's question, in which it provided one example of simple negligence, was also a correct statement of the law. The district court's decision to provide an example of negligence, in lieu of a definition, does not constitute an abuse of discretion. This court therefore rejects Mitchell's challenge to the jury verdict based on the district court's instructions.

## D.    Summary Judgment

Mitchell, joined by Suiter, next argues the district court erroneously granted summary judgment in favor of Blue Bird.[17]  This court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the party opposing summary judgment.  *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 941 (10th Cir. 1994).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Mitchell and Suiter assert that Blue Bird is liable under the Odometer Act because it failed to attach a written notice to the Coach indicating it had replaced the odometer.  When an odometer is replaced and the new odometer cannot be reset to reflect the actual mileage, the Odometer Act requires "the owner of the vehicle or agent of the owner" to attach a written notice to the vehicle specifying both the mileage before the replacement and the date of the replacement.  49

---

[17]Blue Bird argues that because Mitchell was found liable for violating the Odometer Act, Mitchell may not bring a claim under the Act against Blue Bird. *See Haynes*, 917 F.2d at 454 ("Subsequent transferors with knowledge who fail to report actual mileage are not permitted to recover damages from previous transferors in the chain of violations.").  Because this court upholds the district court's grant of summary judgment in favor of Blue Bird, we need not discuss whether Mitchell's claims against Blue Bird are proper under the Odometer Act.

U.S.C. § 32704(a). Civil liability attaches only if the owner/agent acted with intent to defraud. *See id.* § 32710(a). As discussed above, this court has held that such an intent may be inferred from reckless disregard. *See Haynes*, 917 F.2d at 453.

The undisputed facts show that in November 1988, three months after the Desbiens purchased the Coach, Blue Bird replaced the Coach's odometer because it was not functioning properly. The new odometer was set at zero miles. Neither Blue Bird nor the Desbiens affixed a notice to the Coach indicating the odometer had been replaced. Blue Bird gave the Desbiens the old odometer and records documenting the repair. In September 1992, almost four years after the odometer had been replaced, the Desbiens consigned the Coach to Mitchell, which subsequently sold the Coach to Suiter.

The district court, relying on *Hill v. Bergeron Plymouth Chrysler, Inc.*, 456 F. Supp. 417 (E.D. La. 1978), concluded that summary judgment was appropriate because "no party has alleged facts to support a finding that Blue Bird intended to deceive or cheat the owner or purchaser of the motor coach or even that Blue Bird had a motive for misrepresentation." The facts in *Hill* closely resemble the facts in this case. In *Hill*, an auto repair shop replaced a malfunctioning odometer but failed to reset the new odometer or affix a notice to the vehicle. *See* 456 F. Supp. at 418. Over one year after the odometer had been replaced, the owner sold the

vehicle to a dealer, which subsequently sold the vehicle to the plaintiff. *See id.*

The court concluded that although the auto repair shop may have violated the

Odometer Act by failing to reset the odometer or affix a notice, there was no

evidence indicating that it acted with intent to defraud. *See id.* At most, the

shop's conduct amounted to negligence, which the court concluded was

insufficient to impose liability. *See id.*

We agree with the court's reasoning in *Hill* and uphold the district court's

grant of summary judgment in favor of Blue Bird. The evidence is undisputed

that Blue Bird performed a bona fide repair in replacing the Coach's odometer.

Neither Mitchell nor Suiter alleged that Blue Bird conspired with the Desbiens to

defraud a subsequent purchaser. Further, unlike odometer cases involving

dealerships attempting to consummate a sale, there is no evidence that Blue Bird

stood to gain financially from its failure to affix a notice to the Coach. Even

assuming Blue Bird's conduct violated the Odometer Act, in the absence of any

evidence from which the jury could infer that Blue Bird acted with intent to

defraud, it cannot be held civilly liable.[18]

---

[18]Due to our resolution of this issue, we need not address Blue Bird's
additional arguments in support of the district court's grant of summary judgment:
(1) that it was not acting as the Desbiens' agent and was therefore not required
under the Odometer Act to affix a notice to the Coach stating that the odometer
had been replaced and (2) that Suiter's and Mitchell's claims are barred by the
statute of limitations. In addition, we need not address Mitchell's fifth claim of
error, that Blue Bird's absence from the trial so prejudiced Mitchell that it is

### E.    Attorney Fees

Mitchell next argues the district court erred in awarding $72,454.75 in attorney fees to Suiter. This court reviews the award of fees for abuse of discretion. *See Zuchel v. City & County of Denver, Colo.*, 997 F.2d 730, 745-46 (10th Cir. 1993). We accord great weight to the district court's determination of a reasonable fee due to the factual nature of the issue. *See id.* at 743. The district court "'must nonetheless provide a concise but clear explanation of its reasons for the fee award.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Following the jury verdict in his favor, Suiter moved for an award of attorney fees pursuant to the Odometer Act, 49 U.S.C. § 32710(b). Suiter attached to his motion billing records setting forth all charges for which he sought an award. The district court concluded that because Suiter recovered against only Mitchell and the estate of Mr. Desbien, any work related exclusively to his claims against Blue Bird and Mrs. Desbien should not be included in determining the applicable amount of attorney fees. The court then noted that Suiter had already deleted from the billing records all entries related solely to the pursuit of his claims against Blue Bird, with the exception of 1.3 hours which he inadvertently missed. The court accordingly reduced the total hours submitted by 1.3 hours. The court further concluded that the claims against the Desbiens were "virtually

entitled to a new trial.

-28-

inseparable for purposes of the attorneys' fees award." The court therefore did not reduce the total hours to account for work related to the claims against Mrs. Desbien.

On appeal, Mitchell argues the district court abused its discretion by including in the attorney fee award fees incurred for work related to Suiter's claims against Blue Bird. Mitchell identifies several dates in the billing records where the entry relates to multiple defendants, including Blue Bird, without specifying the hours attributable to each defendant.[19] Mitchell argues the district court should have required Suiter to allocate the hours between the defendants so that it could reduce the total hours by those hours attributable to Suiter's claims against Blue Bird.

In response to Mitchell's argument below, the district court stated that Suiter had already deleted from the billing records all entries related solely to his claims against Blue Bird. Although Suiter may have deleted all *entries* related

_____

[19]For example, the billing entry for three hours of work on October 20, 1994, contains the following description:
> RSW Review and analysis of depositions to determine areas where additional discovery is needed and in preparation for questions at trial; preparation of Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Mitchell, Plaintiff's First Set of Interrogatories and Requests for Production of Documents and Things to Desbiens; preparation of Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Blue Bird.

solely to Blue Bird, a review of the billing records indicates that he did not delete all *hours* related solely to Blue Bird. Suiter should not be able to recover fees attributable to pursuit of his claims against Blue Bird simply because he grouped work related to Blue Bird with work related to Mitchell and failed to identify the number of hours expended on each. This court recognizes that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Nevertheless, the district court should have required Suiter to specify the number of hours attributable to Blue Bird and should have reduced the fee award accordingly. By failing to do so, the district court abused its discretion.

Mitchell also challenges the district court's determination that the claims against Mr. and Mrs. Desbien were "virtually inseparable" and argues that those fees attributable to Mrs. Desbien should not have been included in the fee award.[20] The claims against Mr. and Mrs. Desbien were based on their joint ownership of the Coach. The Desbiens filed a joint answer to Suiter's complaint and to Mitchell's cross-claim. At some point in the litigation, however, Mrs. Desbien took a position contrary to that of Mr. Desbien. For example, in her motion for summary judgment, Mrs. Desbien states that she and Mr. Desbien were

---

[20]Mitchell did not argue below, nor does it argue on appeal, that fees attributable to the claims against Mr. Desbien should not be included in the fee award.

separated during the relevant time period and that Mr. Desbien was solely responsible for the transfer of the Coach and the inaccurate odometer statement. The district court denied her motion, concluding that material issues of fact existed as to whether Mr. Desbien was acting as Mrs. Desbien's agent when he executed the odometer statement and whether Mrs. Desbien subsequently ratified her husband's actions. Prior to trial, Mr. Desbien died and his estate was substituted as a party. Mrs. Desbien declared bankruptcy and did not participate in the trial.

As the district court recognized, Suiter is not entitled to recover his attorney fees with respect to his claims against Mrs. Desbien because he did not prevail on those claims. While this court agrees with the district court that the claims against Mr. and Mrs. Desbien were "virtually inseparable" at the beginning of this litigation, thus precluding allocation, once their interests diverged, the issues with respect to each of them became distinct and separable. The district court abused its discretion by refusing to distinguish between the two defendants and including in the fee award those fees attributable to the pursuit of claims against Mrs. Desbien after she distanced herself from Mr. Desbien.[21]

---

[21]For example, Mitchell identifies several billing entries during February 1995 relating solely to Mrs. Desbien's motion for summary judgment.

This court therefore reverses the award of attorney fees and remands to the district court to reduce the award by those fees attributable to Blue Bird and by those fees attributable to Mrs. Desbien once her interests became distinct from the interests of Mr. Desbien.

### F. Prejudgment Interest

Mitchell's final argument is that the district court erred in awarding prejudgment interest to Suiter. This court reviews the district court's decision to award prejudgment interest for abuse of discretion and will reverse only if we are left with a definite conviction that the court clearly erred in its judgment. *See Thorpe v. Retirement Plan of Pillsbury Co.*, 80 F.3d 439, 445 (10th Cir. 1996).

"Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of [the] judgment." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996). Prejudgment interest is therefore "ordinarily awarded, absent some justification for withholding it." *Id.* Nonetheless, prejudgment interest is not recoverable as a matter of right. *See id.* Rather, the district court must first determine whether an award of prejudgment interest would serve to compensate the wronged party. *See id.* at 1257. If the

court determines the award of interest would serve this purpose, the court must then determine whether the equities preclude such an award. *See id.*

In this case, the district court found that an award of prejudgment interest would serve to compensate Suiter and that the equities of the case did not preclude such an award. The court therefore awarded prejudgment interest on the amount of actual damages awarded by the jury.

On appeal, Mitchell argues that prejudgment interest would not serve to compensate Suiter because he had "already been more than compensated" for his loss by the recovery of treble damages. Prejudgment interest and treble damages, however, serve two different purposes. As noted above, prejudgment interest is intended to compensate a party for the delay in recovering his loss. Treble damages, on the other hand, are intended as punishment. Thus, an award of treble damages does not preclude an award of prejudgment interest on the amount of actual damages. *See Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984), *cited with approval in U.S. Indus.*, 854 F.2d at 1257 n.50.

Mitchell also argues that the equities of this case preclude an award of prejudgment interest. As this court has previously recognized, however, the equities favor an award of prejudgment interest when the defendant's behavior involved dishonest or fraudulent conduct. *See U.S. Indus.*, 854 F.2d at 1257.

Although Mitchell contends that its conduct was merely negligent, the jury found Mitchell acted with intent to defraud based on its reckless disregard for the accuracy of the odometer statement given to Suiter. This court therefore rejects Mitchell's arguments and concludes the district court did not abuse its discretion in awarding prejudgment interest.

## III. CONCLUSION

For the reasons stated above, this court **AFFIRMS** the judgment of the district court with the exception of the award of attorney fees. On that issue, we **REVERSE** and **REMAND**.[22]

---

[22]Mitchell's Motion to Strike Reply Brief of Plaintiff/Appellee Suiter is granted. *See* Fed. R. App. P. 28(c) (limiting issues to be presented by appellee/cross-appellant in reply brief); 10th Cir. R. 31.2 (same).