James L. HAMMONDS, Executor of the Estate of Varl Hammonds, now deceased, and W.C. Sellers, the real party in interest, Appellants,

v.

OSTEOPATHIC HOSPITAL FOUNDERS ASSOCIATION, d/b/a Oklahoma Osteopathic Hospital, Kenneth H. Stover, Inc., Kenneth H. Stover, D.O., and Stephen Fletcher, D.O., Appellees.

Mack M. BRALY, Appellant,

v.

The Honorable Robert J. SCOTT, Judge of the District Court; Osteopathic Hospital Founders Association, d/b/a Oklahoma Osteopathic Hospital; Kenneth H. Stover, D.O., Inc.; and Steven Fletcher, D.O., Appellees.

Nos. 84357, 82183.

Supreme Court of Oklahoma.

Sept. 17, 1996.

Rehearings Denied March 3, 1997.

See also 917 P.2d 6.

Mack M. Braly, Tulsa, Jim Gassaway, Gassaway & Harris, Tulsa, George Braly, Braly & Braly, Ada, W.C. Sellers, W.C. Sellers, Jr., Sapulpa, for Appellants.

Joseph A. Sharp, John H.T. Sheridan, Karen M. Grundy, Best, Sharp, Holden, Sheridan, Best & Sullivan, Tulsa, Mike Barkley, Ann Makela Schneider, F. Will DeMier, Leslie C. Weeks, Barkley, Rodolf & McCarthy, Tulsa, for Appellees.

OPALA, Justice.

A single issue is dispositive of the two consolidated causes. Did the trial court abuse its discretion by imposing the 12 O.S. 1991 § 2011[1] sanction against Braly and Sellers, counsel in the case, for prosecuting Hammonds' motion to impose sanctions upon the defendants? Our answer is in the affirmative.

## I

### THE ANATOMY OF LITIGATION

While a patient at Oklahoma Osteopathic Hospital [Hospital], Varl Hammonds [Hammonds or patient] escaped his restraints on November 8, 1982 and fell from his third-floor room's window. Joyce Walters (his daughter) moved him the next day to another facility. Contemporaneously with the transfer, she secured from Hospital a copy of her father's medical charts.

A lawyer named D.B. originally represented Varl Hammonds. After he had completed an investigation of Hammonds' injury, the Hammonds' legal representation fell to S.W., who in 1984 brought a negligence action against Hospital, Stover and Fletcher[2] [collectively "defendants"].[3] It was while S.W. was preparing for trial in December 1990 that he *first* came to realize there were *three different versions* of Hammonds' medical charts. S.W. retained Messrs. Braly and Sellers to serve as his co-counsel. The latter lawyers moved on February 19, 1991 for sanctions against the defendants (by striking their answers). They alleged that the defendants (or their lawyers) improperly modified the produced medical records of the patient.[4] The motion was signed by Braly.[5] The defendants' responses sought sanctions (against Braly and Sellers).

Following a three-day hearing the trial judge denied Hammonds' motion and, on

---

1. The pertinent terms of 12 O.S.1991 § 2011 are: "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and it is not interposed for any improper purpose.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction...."

2. Kenneth H. Stover and Steven Fletcher are the physicians who were charged with Hammonds' care while he was in Oklahoma Osteopathic Hospital.

3. Varl Hammonds died on May 18, 1988. James L. Hammonds, the administrator of his estate, continued to prosecute the action.

4. All parties agree that there are three different versions of Hammonds' medical charts. The *first* is that secured by Hammonds' daughter (Joyce Walters) on November 9, 1982 when her father was discharged from the hospital. While the *second* version's source is debated, it is agreed that parts of it were secured from Hospital by D.B. sometime between the latter part of 1982 and early 1983 (when he was representing Hammonds). A "complete" version of the medical charts was given to Hammonds' lawyers (by Hospital's counsel) on December 27, 1990. The *third* version also was attached as an exhibit to a sealed deposition by Stover, taken in 1985.

5. Although the plaintiff's critical motion *was signed by Braly* only, *sanctions were imposed against both Braly and Sellers*. We do not reach the issue of non-signer's liability. Because we hold that the July 30, 1993 order imposing sanctions must be reversed, no discussion of that issue is necessary. *See* in this connection, *Unit Petroleum Company v. Nuex Corp.*, Okl., 807 P.2d 251 (1991). For the same reason, we do not express any view on the enforceability of Braly's agreement with the defendants, by which Braly's liability for sanctions was sought to be conditionally satisfied.

January 2, 1992, imposed a § 2011 [6] sanction against Braly and Sellers, as *joint* obligors. Once the monetary amount to be imposed as sanction had been set, the proceedings were memorialized and placed of record on July 30, 1993.

*Sellers timely* moved for a new trial. His motion was denied on September 14, 1994, and he appealed on September 22, 1994.[7] Pursuing a different course for corrective relief from the same sanction order, *Braly* timely brought an appeal on August 26, 1993. After an adverse decision, he sought certiorari, which was granted. The *Sellers* appeal and the *Braly* certiorari quest stand consolidated for disposition by a single opinion.

## II

### THE STANDARD OF REVIEW

■ The correctness of a nisi prius imposition of sanctions is reviewed under an *abuse-of-discretion* standard.[8] If the trial court's decision stands supported by the record and reason, it will not be disturbed on review.[9] In assaying the reasonableness of Braly and Sellers' professional *pre-filing* inquiry into the integrity of the medical records in question, we are duty-bound to consider four factors: (1) the amount of time

available to the signer for conducting relevant factual and legal investigations; (2) the necessity for reliance on a client for underlying factual information; (3) whether the case was referred to the signer by another member of the bar; and (4) the plausibility of the legal position advocated.[10]

## III

### THE CRITERIA FOR IMPOSING THE § 2011 SANCTIONS

■ Under the terms of 12 O.S.1991 § 2011, sanctions may be visited upon a legal practitioner who *signed* the critical document on file.[11] If the standards prescribed by § 2011 are offended, the violation is *complete* when the signed paper is *filed*. The text of § 2011 coincides with that of the 1983 version of Fed.R.Civ.Proc. Rule 11.[12] Before deciding whether the requested sanction should be imposed, the trial judge must ascertain if, *when first setting in motion the critical stage*, the offending counsel *could* reasonably have argued in support of the legal theory that was being advanced.[13] In order to escape the condemnation sought, it is *not necessary* that counsel—against whom sanctions are requested—*prevail* upon the *invoked theories*.[14]

6. For the pertinent terms of 12 O.S.1991 § 2011, see *supra* note 1.

7. *See Hammonds v. Osteopathic Hosp. Found. Ass'n*, Okl., 917 P.2d 6 (1996).

8. *Broadwater v. Courtney*, Okl., 809 P.2d 1310, 1313 (1991).

9. *Abel v. Tisdale*, Okl., 619 P.2d 608, 612 (1980).

10. For a discussion of these factors when used in evaluating the imposition of sanctions, see *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988); Fed.R.Civ.P. 11 Advisory Committee note (1983); *Matthews v. Freedman*, 128 F.R.D. 194, 197–98 (E.D.Pa.1989).

11. *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 69 (3d Cir.1988); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987).

12. *See Teamsters, supra* note 11 at 68; *Local 938 Joint H. & W. Tr. F. v. B.R. Starnes Co.*, 827 F.2d 1454, 1458 (11th Cir.1987); *Greenberg v. Sala*, 822 F.2d 882, 887–889 (9th Cir.1987). *See also*

the Advisory Committee's notes on Fed.Rules Civ.Proc.Rule 11 [as amended in 1983] which state:

"The rule is *not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories*. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." [Emphasis added.]

Comments on Fed.Rules Civ.Proc.Rule 11 [as amended in 1983] and federal jurisprudence applying the amended rule are of particular relevance to understanding and construing the provisions of 12 O.S.1991 § 2011 because, until recently, the two rules mirrored each other. The federal rule was amended in 1996. The language of § 2011 is no longer identical to the text of Rule 11 that is now in force.

13. *See Lingle, supra* note 10 at 95.

14. *Mercado v. U.S. Customs Service*, 873 F.2d 641, 646–47 (2d Cir.1989); *Burkhart Through Meeks v. Kinsley Bank*, 852 F.2d 512, 514–15 (10th Cir.1988); *Gaiardo, supra* note 11 at 96; *Lingle, supra* note 10 at 96.

██ The appropriateness of sanctions depends on the *pre-filing* conduct by counsel who signed the critical document. That conduct must be tested by a *standard of objective reasonableness* under the then-existing circumstances.[15] Sanctions are appropriate only for (a) *frivolous filing*[16] or for (b) filing made with an *improper purpose* in mind.[17]

## IV

## TESTING WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SANCTIONING BRALY AND SELLERS

██ Hammonds' suit was first filed in 1984. Braly and Sellers were *not* joined as plaintiff's counsel until the latter part of 1990. When they came to the case, at least three *different* versions of Hammonds' medical charts had been discovered.[18] Copies of these versions were furnished them by S.W., the lawyer who had commenced the suit. It is unrefuted that (a) when Braly and Sellers were retained, S.W. assumed that he had all of Hospital's medical records for the Hammonds case[19] and (b) he had failed to request the defendants to provide him a "complete" copy of Hospital's charts. It is equally clear that a "complete" copy of Hammonds' medical charts stood attached to a *sealed 1985 deposition* by Stover (which *S.W.* had taken). The defendants do not refute that, *after his release* from the Hospital, Hammonds' medical records *were modified.* During the May 28–29, 1991 nisi prius hearing (on plaintiff's motion for sanctions) Hospital explained that all the *Stover modifications* of the critical medical records were entered within a reasonable time (six days) after Hammonds' discharge.

It was *but a month before trial*[20] and at the end of the discovery process that Braly and Sellers were brought into the case as S.W.'s co-counsel. When Braly signed the motion for sanctions, he *knew that there were three different versions* of Hammonds' medical charts and that (in some form) all three had emanated from Hospital, either directly or through its counsel. Even if Braly and Sellers had been aware—which they concededly were not—that the version of Hammonds medical records which was given to them as a trial exhibit *was identical* to that which stood attached to Stover's 1985 deposition, they would not have had an adequate answer to *the critical question of why and when the suspicious-appearing modifications were made.* The deposition exhibit, which would have supplied nothing more than that Hospital's records had been altered, would not have satisfied the inquiry to be pressed. Their concerns about the critical records' integrity were no doubt fortified when, *during Braly and Sellers' pre-filing inquiry,* Dr. Morrell, an expert in medical documentation, told them that *the records provided for the Hammonds case were unreliable.*[21] Considering that Braly and Sellers were retained a short time before trial, it was far from unreasonable for them (a) to place reliance on the materials earlier secured by

15. *Local 938, supra* note 12 at 1458.

16. A court-filed instrument is factually frivolous if a competent lawyer, after reasonable inquiry, could not form a reasonable belief that it was well founded in fact. *Greenberg, supra* note 12 at 887–89; *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

17. *Greenberg, supra* note 12 at 885.

18. For the sources of the respective versions of the critical hospital records, see *supra* note 4.

19 Tr.trans.—May 28–30, 1991 hearing, p. 85.

20. Tr. trans.—May 28–30, 1991 hearing, p. 87. *See also* the appearance docket which shows that on December 18, 1990 the case was set on the docket for a jury trial that was to begin January 7, 1991. While the appearance docket sheets cannot be accepted by a reviewing court as a proper substitute for the judge's memorialized entry of judgment, of orders or of any proceedings occurring at *nisi* prius, they may be used for the purpose of informing the appellate court about filings effected and about *scheduled* nisi prius events. *Martin v. Lib. Nat. Bank & Trust,* Okl., 839 P.2d 179, 179–80 (1992); *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 935 n. 5 (1989); *Little v. Employer's Casualty Co.,* 180 Okl. 628, 71 P.2d 687, 687–88 (1937).

21. Braly and Sellers sought Dr. Morrell's opinion as part of their pre-filing inquiry. Although Morrell's credentials later came to be questioned [see Hospital's answer brief p. 12], it is the signing counsel's state of mind *when the motion for sanctions is filed* that is the focal point on our review.

their client and by co-counsel and (b) to challenge the patent alterations as the entering physician's self-serving afterthoughts.

If the discovery probing by Hammonds' *earlier* counsel was indeed legally inadequate (because it did not resolve the discrepancies between the differing versions of Hammonds' medical records), an issue we need not reach today, the deficient handling by those professionals could not be foisted upon Braly and Sellers. The latter stand sanctionable, if at all, for no other misdeeds than their own.

Braly and Sellers entered the case shortly before trial. They were confronted with three differing versions of a critical record— Hospital's medical charts for Hammonds. They did secure the opinion of an expert that *the records had been altered* in an effort to add strength to the defendants' defensive posture in the case. The circumstances known and knowable when the plaintiff's motion for sanctions was filed, and the rational inferences that may be drawn from them, all serve to support the reasonableness of Braly and Sellers' decision to press Hammonds' motion. Their conduct amply meets the § 2011 standards for pre-filing investigation.

## V

## THE VITRIOLIC RHETORIC USED BY BRALY (AND SELLERS) IN THE PLAINTIFF'S MOTION FOR SANCTIONS DOUBTLESS DIVERTED THE TRIAL JUDGE'S FOCUS FROM THE CRITERIA THAT GOVERN THE IMPOSITION OF § 2011 SANCTIONS—THE REASONABLENESS OF COUNSEL'S PRE–FILING INQUIRY

The trial court's order sanctioning Braly and Sellers is a product of its over focusing on the vitriolic rhetoric used in the plaintiff's motion for sanctions.[22] This undoubtedly led the court into erroneously concluding that a *complete exoneration* of the defense would establish the challenged litigation conduct by

plaintiff's counsel to be *ipso facto* sanctionable. In short, the defendants' *blamelessness* came to be inextricably interconnected with Braly and Sellers' *culpability*. While we *do not condone* the harsh tone of either the motion's text or that of its supporting brief, we must not *confuse* the defendants' (and their lawyers') well-documented *blamelessness* with an automatic *condemnation* of Braly and Sellers. The latter were not required to *prevail* upon Hammonds' motion in order to escape the court's censure for bringing it. Braly and Seller's pre-filing inquiry was *not* unreasonable *when considered in light of the circumstances known and knowable to them when their motion was signed and filed.*

## VI

## SUMMARY

The purpose of the § 2011 sanctions is to deter and punish the filing of frivolous court papers that are legally unreasonable or without factual foundation. When determining the *objective reasonableness* of a signing practitioner's pre-filing inquiry, the district court must be ever mindful that a reasonable *lawyer's zeal or creativity* in pursuing factual and legal theories on behalf of a client *may not be chilled.*[23] Consideration of the following factors is critical: (1) the amount of time available to the signer for conducting relevant factual and legal investigations; (2) the necessity for reliance on a client for underlying factual information; (3) whether the case was referred to the signer by another member of the bar; and (4) the plausibility of the legal position advocated.

Considering that where, as here, the two counsel (against whom sanctions were sought) came into the case only weeks before trial was to begin, it was far from unreasonable for them to rely upon the completed discovery. In the face of three *differing* versions of the same critical documents (Hammonds' medical records), supplied by the defendants (or their counsel), plaintiff's prosecution of a motion to sanction (by strik-

---

**22.** Hammonds' brief (in support of its motion for sanctions) represents that "someone" was attempting to perpetrate a fraud upon the court by altering Hammonds' medical records and that this was done either by one or more of the

defendants "OR THEIR COUNSEL" [emphasis in the original] or some combination of them.

**23.** *See* authorities cited *supra* note 12.

ing the defendants' answers) was not unreasonable as a move to secure an inquiry that would ascertain which of the three versions speaks the truth.

Although the motion's text (which Braly signed) could be called intemperate and vituperative, it may not be said that, under the circumstances, Braly and Sellers' act of pressing the inquiry is sanctionable litigation-related misconduct. We hence hold:

IN CAUSE NO. 82,183, WHICH CAME TO U.S. ON CERTIORARI, THE OPINION BY THE COURT OF APPEALS IS VACATED, THE TRIAL COURT'S ORDER REVERSED, AND THE PROCEEDING REMANDED WITH DIRECTIONS TO DENY THE DEFENDANTS' APPLICATION FOR SANCTIONS; IN CAUSE NO. 84,357, WHICH CAME BEFORE U.S. ON APPEAL, THE NISI PRIUS ORDER IS REVERSED AND THE PROCEEDING IS REMANDED WITH DIRECTIONS TO DENY THE DEFENDANTS' APPLICATION FOR SANCTIONS.

WILSON, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J., recused.