2000 OK 89

**DEAN BAILEY OLDS, INC.,**
**Plaintiff–Appellant,**

v.

**RICHARD PRESTON MOTOR COMPA-**
**NY, INC., an Oklahoma corpora-**
**tion, Defendant–Appellee,**

and

**Old Republic Surety Company,**
**Defendant.**

**No. 92,141.**

Supreme Court of Oklahoma.

Nov. 28, 2000.

Rehearing Denied Sept. 11, 2001.

7

Thomas G. Marsh, David T. Marsh, Marsh & Marsh, Tulsa, OK, for Plaintiff–Appellant.

Bradley K. Beasley, Sheila M. Powers, Boesche, McDermott & Eskridge, L.L.P., Tulsa, OK, for Defendant–Appellee.

## OPINION

WATT, J.

¶ 1 The issues in this appeal are (1) whether the trial court erred in granting attorneys' fees for defendant, Richard Preston Motor Company, Inc., and against plaintiff, Dean Bailey Olds, Inc and, if the trial court did not err, (2) whether the attorneys' fees award was excessive.

¶ 2 There were originally other parties to the suit, none of which are parties to this appeal. Because the issues before us involve only plaintiff and defendant, our statement of the facts and procedural background will ignore the fact that Preston's surety company and a dealer who had owned the car in question in this matter before Preston bought it were defendants in the trial court but are not parties to this appeal. Similarly, we will not identify or further mention others whom Preston joined as third-party defendants but also are not parties to this appeal.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 This case arose from the sale by Preston Motor Company of a 1991 Oldsmobile Cutlass car to Dean Bailey Olds. Both Preston Motor Company and Dean Bailey Olds are located in Tulsa. Preston bought the car from Malone Motor Company, a Cadillac Oldsmobile dealer in Bartlesville, on June 8, 1995. The Oklahoma certificate of title, which Malone Motor Company assigned to Preston Motor Company when it sold the car, stated that the odometer read "43368 ACTUAL." On the back of Oklahoma titles is the following certification:

I certify that to the best of my knowledge that the ODOMETER READING is the ACTUAL MILEAGE of the vehicle unless one of the following statements is checked:

_____ [no tenths]

ODOMETER READING

[ ] 1. The amount of mileage stated is in excess of mechanical limits.

[ ] 2. The odometer reading is NOT the actual mileage. WARNING ODOMETER DISCREPANCY.

A Malone Motor Company employee, Steven Viles, entered "43529" as the odometer reading and left both check boxes blank, thereby certifying that the mileage was accurate to the best of his knowledge.

¶ 4 Richard Preston of Preston Motor Company had once worked for Dean Bailey Olds and had done considerable business with it and with Malone Motor Company. Preston Motor Company bought the car after Malone Motor Company's sales manager,

Steven Viles, had asked Richard Preston if Preston thought he could sell it wholesale for $9,000.00. After Viles asked Preston if he thought he could sell the car, Preston called Dean Bailey Olds and discussed the car with its used car sales manager, Dennis Farquar. Farquar told Preston that Dean Bailey Olds would pay $9,000.00 for the car "if it's a nice car and drives right." On the strength of his own assessment of the car and Farquar's representation, Preston bought the car from Malone Motor Company for $9,000.00.

¶ 5 Preston then drove the car from Bartlesville to Dean Bailey Olds's premises in Tulsa. After Farquar and another Dean Bailey Olds employee, John Rogne, inspected the car Dean Bailey Olds bought it from Malone Motor Company for $9,000.00. Preston Motor Company had owned the car for only two hours. Preston Motor Company signed an odometer certification showing an odometer reading of 43,580 miles. It is undisputed that Malone Motor Company's sales manager, Richard Preston, and the two Dean Bailey Olds employees who also inspected the car are experienced in buying and selling used cars and that none of them had any reason to suspect that the car might have been driven more miles than showed on its odometer.

¶ 6 Dean Bailey Olds did some work on the car and sold it in July to a retail purchaser, Joan Mitchell, for $11,292. Dean Bailey Olds provided to Ms. Mitchell an odometer certification like the one Malone Motor Company had given to Preston Motor Company. That odometer certification reflected a mileage on the car of 43,630 miles. Ms. Mitchell had considerable trouble with the car and, after she had owned it for several months, Dean Bailey Olds agreed to buy it back from her for the amount she had paid, less a discount for the mileage Ms. Mitchell had added to the car.

¶ 7 After Dean Bailey Olds repurchased the car from Ms. Mitchell, it sent the car to an auction company in Oklahoma City for sale. Dean Bailey Olds requested that the auction company obtain a Carfax report on the car because of the trouble Ms. Mitchell had with it. For a fee, Carfax will provide a history of a car. Because of the Carfax report an employee of the auction company told the Dean Bailey Olds representative that he believed the car had over 100,000 miles on it and refused to present it for sale because of the possibility that its odometer understated the car's actual mileage.

¶ 8 After learning that there was some indication that the odometer on the car was wrong, Dean Bailey Olds obtained copies of the Kansas title records—the car had been titled in Kansas before it was re-titled in Oklahoma. The Kansas authorities had issued a title on the car, dated May 27, 1994, which showed mileage of "114179 ACTUAL." But the Kansas records also showed that in July 1994, the then owner of the car, Robert P. Thomas, executed a Kansas Motor Vehicle Bureau form of affidavit and an odometer disclosure statement reflecting that the actual mileage on the car was 41,121. A new Kansas title, dated July 14, 1994 and showing that the actual mileage of the car was 41,121, was then issued.

¶ 9 Upon receiving the information described above from the Kansas authorities, Dean Bailey Olds demanded that Preston Motor Company buy back the car for the original $9,000.00 purchase price. Preston Motor Company refused and Dean Bailey Olds brought suit. Dean Bailey Olds claimed that Preston Motor Company "knew or should have known that the odometer reading was false," and that it had, thereby, (1) violated the federal Truth in Mileage Act, 49 U.S.C. §§ 32710,[1] (2) committed common law fraud, and (3) negligently misrepresented facts

---

1. Title 49 U.S.C. § 32710 provides as follows,

  (a) Violation and amount of damages.—A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.

  (b) Civil actions.—A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

¶ 10 At the trial, Dean Bailey Olds' owner, Horace V. Noe, admitted that at the time Dean Bailey Olds bought the car from Preston Motor Company Noe "had every belief" that the odometer statement Preston had signed "was correct." Noe also testified on cross-examination by Preston Motor Company's counsel:

Q. Mr. Preston owned this car for one day. Are you telling the court and jury that he should have checked the title in Kansas from the time he bought the car in Bartlesville and drove to Tulsa?

A. No.

Q. You don't think he should have done that? That was not reasonable for him to have done that?

A. Not seeing the condition of the car when Richard sold it to us-I can't answer that question.

¶ 11 On June 16, 1998, at the conclusion of the presentation of its evidence, Dean Bailey Olds dismissed its Truth in Mileage Act claim and its common law fraud claim, and elected to solely rely on its claim that Preston Motor Company had negligently misrepresented facts. The trial court then granted Preston Motor Company's motion for directed verdict.

¶ 12 Preston Motor Company moved for an attorneys' fee under the Truth in Mileage Act, and under 12 O.S.1991 § 1101.[2] On August 14, 1998, the trial court entered its order declaring that Preston Motor Company was entitled to attorneys' fees.[3]

¶ 13 After a hearing, the trial court ordered that Dean Bailey Olds pay Preston Motor Company an attorneys' fee of $22,060.50. The trial court's award was based on the time records and testimony of Preston Motor Company's counsel and computed at a rate of $165.00 per hour. Dean Bailey Olds appealed from the trial court's attorneys' fee order but did not appeal from its order directing a verdict for Preston Motor Company.

## DISCUSSION

■ ¶ 14 We infer from the trial court's order granting Preston Motor Company attorneys' fees against Dean Bailey Olds, set out in note 3, that the trial court rejected Preston Motor Company's claims that it was entitled to such fees under either the Truth in Mileage Act or 12 O.S.1991 § 1101. It appears that the trial court based its order granting attorneys' fees on its conclusion that Dean Bailey Olds's conduct in prosecuting its case against Preston Motor Company was "onerous." For the reasons set forth in the balance of this opinion we hold that the trial court's order granting Preston Motor Company an attorneys' fee because Dean Bailey Olds' conduct was onerous was supported by

---

2. Title 12 O.S.1991 § 1101 provides as follows, The defendant, in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff or his attorney an offer, in writing, to allow judgment to be taken against him for the sum specified therein. If the plaintiff accept the offer and give notice thereof to the defendant or his attorney, within five days after the offer was served, the offer, and an affidavit that the notice of acceptance was delivered within the time limited, may be filed by the plaintiff, or the defendant may file the acceptance, with a copy of the offer, verified by affidavit; and in either case, the offer and acceptance shall be noted in the journal, and judgment shall be rendered accordingly. If the notice of acceptance be not given in the period limited, the offer shall be deemed withdrawn, and shall not be given in evidence or mentioned on the trial. If the plaintiff fails to obtain judgment for more than was offered by the defendant, he shall pay the defendant's costs from the time of the offer.

3. The trial court entered a minute order memorializing its ruling, which, in relevant part, reads as follows:

This Court believes that even considering the federal law, attorney fees are allowable to Robert Preston Motor Company as against Dean Bailey Olds.

Here the purpose of the federal statute is to protect the consumer—the ultimate auto owner—not a large dealer. Here plaintiff sold the vehicle—more than once—certifying odometer readings at each sale; further, Plaintiff had the power to check the odometer title history of the car before it ever went on the market; finally, the owner of Dean Bailey Olds testified he did not expect that Richard Preston should have discovered the problems. Thus the Court is of the opinion that this was an onerous suit brought by Plaintiff against Defendant, Richard Preston.
. . .
[Emphasis by the trial court.]

the law and the evidence.[4]

¶ 15 In *City National Bank & Trust Co. v. Owens*, 1977 OK 86 ¶ 15, 565 P.2d 4, we recognized an exception to the "American Rule" that in the absence of a statute or a contract that provides for attorneys' fees, the parties to litigation bear their own attorneys' fee. In *Owens* we said,

> ... one of the exceptions to the general rule recognized at common law and in modern practice, is the court's inherent equitable power to award attorney fees regardless of the fact that an award is not authorized by statute or contract, whenever overriding considerations, such as oppressive behavior on the part of a party, indicate the need for such a recovery.

[Emphasis added.] In *Owens* we affirmed an attorneys' fee awarded by the trial court because plaintiff had dismissed his case without prejudice on the fourth day of trial. We noted that the fees were not awarded because of any right to recover such fees during the course of litigation. "Rather," we held, "we are concerned with the court's power to tax as costs, any necessary expenditures including attorney fees, against a party who causes the necessary expenditures to be wasted." 1977 OK 86 at ¶ 6, 565 P.2d 4.

¶ 16 We note that the word "oppressive," which we used in *Owens* to describe the type of behavior that will support an award of an attorneys' fee is a synonym of the word "onerous," used by the trial court to support its attorneys' fee order. The Oxford English Dictionary (2d Ed. on CD–ROM) defines "onerous" as, "Of the nature of a burden; burdensome; oppressive, troublesome." [emphasis added.]

█ ¶ 17 In *Gorst v. Wagner*, 1993 OK 50, 865 P.2d 1227, we held that *Owens* had, in effect, been modified by an act of the legislature, 23 O.S. Supp.1986 § 103 which provided,

In ... any action for damages to personal rights the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,-000.00) for reasonable costs, including attorney fees, incurred with respect to such claim or defense.

We held in *Gorst* that § 103 applied in a case in which a conspiracy to fraudulently induce the breach an employment contract was alleged and that attorneys' fees and costs could not, therefore, exceed $10,000. We so held based on our conclusion that plaintiff's conspiracy claim was "an action for damages to personal rights."

¶ 18 Dean Bailey Olds has cited to neither *Gorst* nor § 103 in any of its filings in this appeal. In any event we hold that neither *Gorst* nor § 103 is applicable here because the misrepresentation of the car odometer's reading involved damage to Dean Bailey Olds' business property, not personal rights.

█ ¶ 19 In *Rainbow Travel Service Inc. v. Hilton Hotels Corporation*, 896 F.2d 1233 (10th Cir.1990) the court interpreted what is now 12 O.S.1991 § 727(E). Section 727(E) is similar to 23 O.S. § 103, in that it provides for prejudgment interest, as § 103 provides for attorneys' fees, where a verdict has been rendered "for damages by reason of injuries ... to personal rights." In *Rainbow Travel* the court denied plaintiff's claim for prejudg-

---

4. Because of our holding, we need not address whether attorneys' fees could have been properly awarded under either the Truth in Mileage Act (note 1) or under 12 O.S.1991 § 1101 (note 2). We make two observations, however. First, in the recent case of *Miller's Apple Valley Chevrolet Olds Geo, Inc. v. Goodwin*, 177 F.3d 232, 234 (4th Cir.1999), the court held unequivocally that attorneys' fees are not awardable to prevailing defendants under the Truth in Mileage Act because the Act "permits only successful plaintiffs to recover their costs and attorney's fees." We have been unable to find any cases that are contrary to *Goodwin*. Second, we held in *Bullard v. Grisham Const. Co.*, 1983 OK 21 ¶ 5, 660 P.2d 1045, "Neither [12 O.S.1991] § 1101 nor § 1106 allow for attorneys' fees ."

ment interest for fraudulent damage to the good will of its business saying,

> Clearly, the statute [12 O.S. § 727] only allows prejudgment interest where the damages arise by reason of 'personal injuries or injury to personal rights.' In this case, the damages arose because of injury to a business asset: good will.

We agree with the Tenth Circuit's conclusion in *Rainbow Travel* that "personal rights" are not violated by actions that cause damage to business property. Here Dean Bailey Olds sued Preston Motor Company for damages arising from damage to Dean Bailey Olds' business asset: the 1991 Oldsmobile Cutlass car. Thus, neither *Gorst* nor 23 O.S.1991 § 103 applies here. We hold, therefore, that our reasoning in *Owens* applies here without limitation.

■ ¶ 20 In its brief in chief, Dean Bailey Olds cited to several cases under the Truth in Mileage Act, which stand for the proposition that a reckless disregard for the truth of the mileage on a vehicle constitutes a violation of the Act. In support of this proposition Dean Bailey Olds cited to, among other cases, *Suiter v. Mitchell Motor Coach Sales, Inc.* 151 F.3d 1275 (10th Cir.1998). While the proposition that reckless disregard for the truth is actionable is correct as far as it goes, Dean Bailey Olds failed to explain that there is more to the rule: "Where a defendant could reasonably conclude, upon inspection of a vehicle, that the mileage on the odometer of the vehicle was incorrect, the defendant has a duty to inform the potential purchaser that the actual mileage of the vehicle is unknown." 151 F.3d at 1284. In *Suiter*, defendant failed to look at the service records, which were in the glove box of the motor home in question and which, if examined, would have shown that the odometer had been replaced and that the mileage shown on the current odometer was understated.

¶ 21 In contrast to *Suiter*, in the case before us used car experts at Malone Motors, from whom Preston bought the car and at Dean Bailey Olds, itself, to whom Preston sold the car, unanimously concluded that the condition of the car was consistent with the mileage shown on its odometer. Thus, it is undisputed that there was nothing about the car that could have reasonably alerted Preston to the possibility that the mileage shown on its odometer might have been understated and there was no factual basis to support Dean Bailey Olds' claim that Preston Motor Company had been guilty of negligent misrepresentation.

¶ 22 Despite the lack of any evidentiary support for its claims that Preston Motor Company knew or should have known that the car's odometer was in error, Dean Bailey Olds prosecuted its suit for more than two years, from May 1996 until the trial court granted Preston Motor Company motion for directed verdict in June 1998 after two days of trial. The record supports the trial court's conclusion that Dean Bailey Olds' "onerous" conduct made an attorneys' fee award appropriate. We hold that the trial court's characterization of Dean Bailey Olds's conduct as "onerous" was the functional equivalent of a finding that such conduct was "oppressive," as we used the term in *Owens*. Thus, our reasoning in *Owens* applies here, as well.

[5] ¶ 23 Finally, Dean Bailey Olds claims in its brief in chief that the trial court's attorneys' fee award was excessive because, "The Oklahoma Legislature in the consumer protection statutes limits the right of recovery to bad faith, groundless claims to a maximum of Ten Thousand Dollars ($10,000.00)." That statute, 15 O.S. Supp.1991 § 761.1, does not apply here. Section 761.1 calls for attorneys' fees for "aggrieved consumers." Clearly, then the statute does not apply here, as the trial court awarded the fees because of Dean Bailey Olds' "onerous" conduct in prosecuting this litigation, not because Preston Motor Company was an "aggrieved consumer." Further, Dean Bailey Olds fails to address the fact that the attorneys' fee awarded by the trial court was granted after a hearing in which there was undisputed testimony supporting the amount awarded. The record supports the trial court's attorneys' fee award of $22,060.50.

## CONCLUSION

¶ 24 The record supports the trial court's finding that Dean Bailey Olds's conduct in prosecuting this suit was "onerous." We

hold that this finding was the equivalent of a finding that Dean Bailey Olds had acted "oppressively." Thus, the record supports the trial court's order imposing attorneys' fees. We further find that the evidence adduced at the attorneys' fee hearing supports the trial court's decision to set the amount of attorneys' fees at $22,060.50.

¶ 25 SUMMERS, C.J., HODGES, KAUGER, WATT, and WINCHESTER, JJ.—concur.

¶ 26 BOUDREAU, J.—concurs in result.

¶ 27 HARGRAVE, V.C.J., LAVENDER, and OPALA, JJ.—dissent.

LAVENDER, J., dissenting.

¶ 1 I respectfully dissent. In my view, the record does not support the trial judge's award of attorney fees to defendant/appellee under the authority of *City National Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4. In my opinion, the majority, without expressly stating so, has expanded the reach of the inherent equitable authority to award limited attorney fees for bad faith, vexatious, wanton or oppressive litigation misconduct enunciated in *Owens*. I am concerned the expansion will have an inordinate chilling effect on access to the courts, a constitutionally anchored right in Oklahoma [OKLA. CONST. art. 2, § 6], because the majority opinion can be read to allow a prevailing defendant a non-statutorily or non-contractually-based attorney fee premised on nothing more than the fact a plaintiff fails to present sufficient evidence in his/her case-in-chief to withstand a demurrer/directed verdict.

¶ 2 I am also troubled because the majority, again without expressly saying so, appears to make the inherent equitable authority exception to the American Rule as to the recovery of attorney fees delineated in *Owens*, at least partially coextensive with 12 O.S. Supp.1994, § 2011, without providing the procedural protections granted by that statute. Further, I have a concern the majority has not adequately described the test to be used for invocation of the inherent authority exception. Particularly, the majority seems to have substituted an objective reasonableness standard for the proper stan-

dard called for by *Owens*. In my view, *Owens* calls for some inquiry into the subjective motivation(s) or reason(s) behind a plaintiff's litigation conduct, or one must be able to say, based on the egregious nature of the misconduct involved, improper motivation may properly be presumed. I am also troubled that the majority may be punishing a client (plaintiff/appellant Dean Bailey Olds, Inc.) for what might be the negligence of its counsel in continuing to advocate a negligent misrepresentation theory even after it may have become apparent there was an insufficient factual basis to show any breach of duty by defendant/appellee.

¶ 3 Under the American Rule—the general/normal rule in Oklahoma—each litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract allowing attorney fee recovery. *Kay v. Venezuelan Sun Oil Co.*, 1991 OK 16, 806 P.2d 648, 650. Any exceptions to the American Rule are narrowly defined [*Id.*] and carved out with great caution. *Beard v. Richards*, 1991 OK 117, 820 P.2d 812, 816. Exceptions are narrowly defined and carved out with great caution because it is understood that liberality of attorney fee awards against the non-prevailing party has a chilling effect on our open access to courts guarantee. See *Beard v. Richards*, 820 P.2d at 816.

¶ 4 One exception to the general American Rule is that carved out in *Owens*. As I understand the import of *Owens* it recognized the inherent equitable authority of a trial court to award attorney fees against a party for bad faith litigation misconduct, misconduct that is vexatious, wanton or engaged in for oppressive reasons. See *Winters By and Through Winters v. City of Oklahoma City*, 1987 OK 63, 740 P.2d 724, 726–727. On more than one occasion this Court has recognized that the bad faith exception authorized by *Owens* is a narrow one and that it should be applied with a degree of caution and restraint. *Wallace v. Halliburton Co.*, 1993 OK 24, 850 P.2d 1056, 1060–1061; *Smith v. State ex rel. Dept. of Human Services*, 1990 OK 19, 788 P.2d 959, 961–962. For attorney fees to be authorized "overriding consider-

ations" must indicate the need for such a recovery. *Owens*, 565 P.2d at 8–9. Thus, our ruling in *Owens* was never intended to be viewed as giving trial courts some broad, all-encompassing equitable authority to award attorney fees. *Smith v. State ex rel. Dept. of Human Services*, 788 P.2d at 962.

¶ 5 To come within the bad faith exception, in my view, it must be shown the litigation is conducted for oppressive reasons, such as delay or the litigation is necessarily an abuse of the judicial process and a waste of public revenue. *Beard v. Richards*, 820 P.2d at 816. To determine if the bad faith exception applies, in my opinion, the focus of the inquiry is on the intent of the person filing the claim, rather than the quality or quantity of the evidence, or ultimate success or failure of the claim. See *Whitlock v. Bob Moore Cadillac, Inc.*, 1997 OK 56, 938 P.2d 737 (bad faith litigation conduct under Oklahoma Consumer Protection Act, 15 O.S.1991, § 751 et seq., as amended); *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, 932 P.2d 1091, 1098–1099 (bad faith conduct in relation to litigation concerning Uniform Trade Secrets Act, 78 O.S.1991, § 85 et seq.); see also *First Nat. Bank and Trust Co. of Vinita v. Kissee*, 1993 OK 96, 859 P.2d 502, 511–514 and *TRW/Reda Pump v. Brewington*, 1992 OK 31, 829 P.2d 15, 23 and f. n. 5 (20 O.S.1991, § 15.1, concerning statutory authority to award attorney fees for frivolous appeal, is not coextensive with the bad faith or oppressive conduct exception to the American Rule enunciated in *Owens*, although there may be overlap between statutory basis for attorney fee award under § 15.1 and common law exception found in *Owens*; determination of frivolity under § 15.1 is made on objective basis from review of entire record).

¶ 6 My review of the record convinces me that the trial judge did not make any inquiry into the subjective intent, motivation(s) or reason(s) behind plaintiff/appellant's litigation conduct or that of its counsel; nor, in my view, can it be said on the instant record that any misconduct involved was of such an egregious nature that some bad motive or intent may be properly presumed. Simply, this record does not appear to show any over-riding considerations calling for the need of an attorney fee recovery.

¶ 7 Furthermore, the majority seems to err because, instead of applying the bad faith test upon which the exception in *Owens* is based—i.e. with its focus on the intent of the supposed offending party(s)-the majority appears to have sub silentio adopted the objective reasonableness standard applied by this Court in certain circumstances under 12 O.S. Supp.1994, § 2011. *Hammonds v. Osteopathic Hospital Founders Association*, 1996 OK 100, 934 P.2d 319, 322–323; *Warner v. Hillcrest Medical Center*, 1995 OK CIV APP 123, 914 P.2d 1060, cert. denied 519 U.S. 861, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996). Section 2011 provides in toto:

A. SIGNATURE. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in his individual name, whose Oklahoma Bar Association identification number shall be stated, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the address of the signer and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless the omission of the signature is corrected promptly after being called to the attention of the attorney or party.

B. REPRESENTATIONS TO COURT. By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2. The claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.

1. HOW INITIATED.

a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.

2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a and b of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.

a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.

b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

3. ORDER. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.

D. INAPPLICABILITY TO DISCOVERY. This section does not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Sections 3226 through 3237 of this title.

¶8 Under the current version of § 2011 the question of whether sanctions are appropriate for certain types of litigation misconduct has its focus on an objective standard. *Warner v. Hillcrest Medical Center, supra*, 914 P.2d at 1064.[1] Under § 2011, no longer may subjective good faith provide a safe harbor against an attorney fee sanction when it

---

**1.** For purposes of this dissent I need not decide whether a subjective intent inquiry would be required for violations falling under 12 O.S. Supp.1994, § 2011(B)(1)—i.e. matters presented for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

becomes objectively apparent there is no viable claim against a named defendant and no longer is there room under § 2011 for a pure heart, empty head defense to an attorney fee award. *Warner v. Hillcrest Medical Center*, 914 P.2d at 1064; *First Nat. Bank and Trust Co. of Vinita v. Kissee*, supra, 859 P.2d at 512. In the present case, however, the applicability of § 2011 is not raised by anyone. I assume it is not raised because the procedural protections mandated by the provision were not followed in this case. See generally *TAL Technologies, Inc. v. L.D. Rhodes Oil Co.*, 2000 OK 38, 4 P.3d 1256 (description of procedural protections). As far I can tell from my review of the record submitted to us in this appeal, no specific notice of the purported offending conduct was provided to plaintiff or its counsel; no opportunity was afforded to correct such conduct by withdrawal of any offending pleading; no opportunity to respond that any claimed offending pleading or advocacy thereof should not be sanctionable was given; nor was any show cause order issued by the trial judge which would have described the offending conduct and afforded an opportunity to be heard.

¶ 9 In the present situation, the negligent misrepresentation theory of liability began through plaintiff/appellant's pleadings. If that theory of liability was, indeed, not factually or legally viable, § 2011 surely would have been applicable to provide a statutory mechanism to sanction any violative conduct. But, § 2011 was not invoked. Instead, that provision was apparently ignored throughout the litigation and the trial court merely side-stepped the procedural mandates of § 2011—a course now seemingly approved of by the majority, under the guise of some broad, all-encompassing inherent equitable authority, something this Court has previously said was not intended by our pronouncement in *Owens*.

¶ 10 In summary, it is my view that a proper analysis of the record does not support application of an *Owens* attorney fee award notwithstanding the trial judge's characterization of plaintiff/appellant's suit as "onerous". There was no showing the suit was brought or litigated in bad faith or for any improper or oppressive reason(s); nor can it be said, on this record, any overriding considerations require an attorney fee award. Therefore, I respectfully dissent.

OPALA, J., dissenting.

¶ 1 The equity-evolved rule of *Owens*[1] is improperly invoked today to impose a counsel-fee award on a defeated party who, while a *tenacious* and *vigorous forensic champion* of its claim, was not shown to have been guilty of litigation-related misconduct that could be termed *abusive, oppressive* or *vexatious*.

¶ 2 I would hence set aside the fee award as unauthorized by either statute or contract between the parties.

---

1. *City National Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4.