2006 OK CIV APP 924

**GEYER BROTHERS EQUIPMENT CO., Plaintiff/Appellant,**

v.

**STANDARD RESOURCES, L.L.C., an Oklahoma Limited Liability Corporation, and Don W. Bullard, an individual, and Arvest Bank, formerly known as Oklahoma National Bank, a national Banking association, Sohio Petroleum, L.L.C., and GBP, L.P., and Richard Gouin, and Standard Energy, L.L.C., an Oklahoma Limited Liability Company, and Verna O. Smith, an individual, and Verna O. Smith, L.L.C., an Oklahoma Limited Liability Company, Defendants/Appellees.**

No. 102,555.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 12, 2006.

Rehearing Denied June 23, 2006.

---

Michael P. Rogalin, Michael P. Rogalin, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Russell James Walker, Andrew J. Waldron, Walker & Walker, Oklahoma City, OK, for Defendants/Appellees Lady Sara Energy, LLC (successor of Arvest Bank, LLC); GBP, L.P.; Richard Gouin; Don W. Bullard; Standard Energy, L.L.C.

Opinion by ROBERT DICK BELL, Presiding Judge.

¶ 1 Plaintiff/Appellant, Geyer Brothers Equipment Co., appeals from the trial court's grant of summary judgment to Defendants/Appellants in Plaintiff's quiet title and accounting action regarding certain oil and gas interests. For the reasons set forth below, we affirm in part and reverse in part the judgment of the trial court.

¶ 2 Between 1982 and 1998, Plaintiff acquired ten leases covering various acreage in Section 1, Township 7 North, Range 12 West in Caddo County. Each of the oil and gas leases contained the same or substantially similar industry standard language in their respective habendum clauses, to wit:

It is agreed that this lease shall remain in force for a term of [fixed number of months/years] from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided. If, at the expiration

of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith; and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on said leased land or on acreage pooled therewith, the production thereof should cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.

The primary terms of each lease ranged from nine months to four years. The primary terms of the last two leases expired on March 23, 1999.

¶ 3 Located on the subject property was one "shut-in" gas well that was completed in June, 1985. Plaintiff was the designated operator of the well until it transferred operations to Defendants/Appellees Standard Resources, L.L.C. and Don W. Bullard in May 1999. Russell Geyer, president and sole shareholder of Plaintiff, stated the well was capable of producing gas in paying quantities immediately upon its completion. However, it is undisputed that neither oil nor gas was produced from the subject property, or from acreage pooled therewith, from November, 1984 to April, 1999. Furthermore, there were no ongoing drilling or reworking operations at the time the primary terms of Plaintiff's last leases expired in March, 1999. The record indicates Defendants reworked the well and brought it into commercial production in May, 1999.

¶ 4 In 2003, Plaintiff filed the present quiet title and accounting action in which it asserted ownership of valid and existing leases covering the subject property. Plaintiff further alleged Defendants have no interest in the leasehold rights, that oil or gas has been produced from the subject well, and that Plaintiff is entitled to an accounting of funds derived from such production. Defendants denied Plaintiff owns any interest in the subject property. Defendants/Appellees Sohio Petroleum, L.L.C. and GBP, L.P. specifically claimed they currently hold the right, title or interest to the leasehold in question.

¶ 5 Defendants moved for summary judgment, arguing all of Plaintiff's leases expired under their primary terms. Specifically, Defendants asserted the leases expired because neither the leasehold nor any acreage pooled therewith produced any oil or gas during the lease terms, and there was no ongoing drilling or reworking operation on the subject lands when the primary terms of any of the leases expired. Plaintiff responded that the well was capable of producing in paying quantities, but explained the failure to produce was due to the absence of a pipeline to the leasehold and disputes over which party/parties held valid leases to the property. Plaintiff urged these issues constituted equitable considerations which justified extensions of its leases.

¶ 6 The trial court granted summary judgment for Defendants, holding Plaintiff's leases expired at the end of their primary terms. The court specifically rejected Plaintiff's equity argument, stating Plaintiff failed to act as a reasonably diligent and prudent operator to bring the well into production. In a subsequent proceeding, the trial court granted Defendants' request for attorney fees and costs. From said orders, Plaintiff appeals. The matter stands submitted for accelerated appellate review on the trial court record pursuant to Rule 13(h), *Rules for District Courts,* 12 O.S. Supp.2002, Ch. 2, App. 1, and Rule 1.36, *Oklahoma Supreme Court Rules,* 12 O.S. Supp.2003, Ch. 15, App.

¶ 7 This Court's standard of review of a trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.,*

1996 OK 80, ¶ 2, 921 P.2d 350, 351–2. Summary judgment is proper when the evidentiary materials "establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Coop.*, 1996 OK 44, ¶ 15, 914 P.2d 669, 674. When this Court reviews the trial court's grant of summary judgment, all inferences and conclusions drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Id.*

¶ 8 Plaintiff first contends the trial court erred in granting summary judgment to Defendants because, it claims, evidence showed the well was capable of producing in paying quantities, and Defendants and third parties interfered with Plaintiff's right to produce the well. Plaintiff presented evidence, which Defendants did not dispute, that the subject well was capable of producing gas in paying quantities during the time Plaintiff was the operator.[1] In *Pack v. Santa Fe Minerals*, 1994 OK 23, 869 P.2d 323, the Court reiterated the term "produced" as used in the typical oil and gas lease means capable of producing in paying quantities. Thus, where a well is capable of producing in paying quantities, a lessee's failure to market product from that well after expiration of the primary term does not automatically result in the termination of an oil and gas lease under the terms of the habendum clause. *Id.* at ¶¶ 8–10, 869 P.2d at 326–7.

¶ 9 Relying on *Smith v. Marshall Oil Corp.*, 2004 OK 10, 85 P.3d 830, Defendants assert Plaintiff's failure to produce gas from the well, combined with the absence of any valid equitable considerations, resulted in a termination of Plaintiff's leases under their respective habendum clauses. However, the *Smith* Court specifically distinguished the facts of that case—where the evidence indicated the subject wells were not capable of producing in paying quantities—with those present in *Pack*—where "the parties stipulated that the subject wells were at all times capable of producing in paying quantities...." *Smith* at ¶ 13, 85 P.3d at 835. In

the present appeal, where we must view the evidence in the light most favorable to Plaintiff, the evidence indicates the subject well was at all times capable of producing in paying quantities. Therefore, *insofar as termination under the habendum clauses is concerned*, we hold *Pack*, not *Smith*, applies to the facts of this case.

¶ 10 Notwithstanding that Plaintiff's failure to market did not result in termination under the habendum clauses of the leases, we note the "long-standing rule ... that typical oil and gas leases contain an implied covenant to market oil and gas from the subject wells." *Pack* at ¶ 26, 869 P.2d at 330.

"In other words in the absence of a specific clause requiring marketing within the primary term fixed in the lease, the completion of a well, as provided therein, capable of producing oil or gas in paying quantities will extend such term, provided that within a reasonable time the actual length of which must of necessity depend upon the facts and circumstances of each case, a market is obtained and oil or gas is produced and sold from such well. In such event if the producing and marketing thereof in such quantities from the well so completed is continued, the lease will extend until the economic exhaustion of the product."

*Id.*, quoting *State ex rel. Comm'rs of the Land Office v. Carter Oil Co. of W. Va.*, 1958 OK 289, ¶ 45, 336 P.2d 1086, 1095. Although the record does not reveal whether any of Plaintiff's first eight leases contained a specific marketing clause, the final two leases did not contain such a clause.

¶ 11 With respect to an implied covenant to market product, "the controlling factual finding is whether or not the temporary cessation of marketing was for an 'unreasonable length of time.'" *Pack* at ¶ 28, 869 P.2d at 331, *quoting Cotner v. Warren*, 1958 OK 208, ¶ 8, 330 P.2d 217, 219. A lessee may voluntarily cease removing and marketing gas from a property for a reasonable time without fear its leases will termi-

---

1. In addition to evidence the well was capable of producing gas immediately upon completion, Russell Geyer stated he retested the well in 1992 and 1998, and opined the well was capable of producing gas in paying quantities on both dates.

nate "where there are equitable considerations which justify a temporary cessation." *Pack* at ¶ 29, 869 P.2d at 331, *quoting Townsend v. Creekmore–Rooney Co.*, 1958 OK 265, ¶ 6, 332 P.2d 35, 37. "If the temporary cessation is reasonable, the lease will continue, and the burden of proving that the lessees failed to use reasonable diligence in the operation of the well squarely rests with the lessors." *Pack* at ¶ 29, 869 P.2d at 331.

■ ¶ 12 Applying the above criteria to the present case, we conclude, under the subject leases' implied covenants to market oil and gas, Defendants proved Plaintiff's failure to produce and market gas from the property was unreasonably lengthy. In reaching this decision, we are mindful of Plaintiff's "equitable considerations" arguments. We first recognize the absence of a pipeline to transport product has been held to be an equitable consideration excusing production under an implied covenant to market. *See Carter Oil*, 1958 OK 289 at ¶¶ 48–54, 336 P.2d at 1096. However, unlike Plaintiff in the present case, the defendant in *Carter Oil* actively attempted to secure a pipeline and market its gas during the time its well was shut in. *Id.* at ¶¶ 51–53, 336 P.2d at 1096. Plaintiff presented no such evidence here. We are also cognizant of Plaintiff's claims of being "locked off" the leased premises in July of 1998. Notwithstanding these claims, the record indicates Plaintiff took no real steps during that time period to resolve the conflicts between the various purported leaseholders or preserve its putative legal rights. Plaintiff did not file the instant suit until April, 2003, nearly five years after allegedly being denied access to the leasehold.

¶ 13 As the trial court aptly stated in its order, Plaintiff presented "no proper evidence of any compelling equitable consideration that would justify the Plaintiff's or its predecessors' long and continuing failure (up to twenty years) to produce oil and gas from the leasehold." On the basis of the foregoing and after *de novo* review of the record, we hold the trial court properly granted summary judgment to Defendants. *See Hunter v. Clarkson*, 1967 OK 114, 428 P.2d 210 (oil and gas lease cancelled where lessee volun-

tarily ceased production and marketing for five months without any circumstances to justify the cessation).

■ ¶ 14 Plaintiff next contends the trial court erred in granting Defendants' motion for attorney fees. We agree. Oklahoma remains "firmly committed" to the American Rule governing the award of attorney fees to a prevailing party. *Morgan v. Galilean Health Enter.*, 1998 OK 130, ¶ 11, 977 P.2d 357, 362. Under the American Rule, "[e]xcept where a statute or contract provides otherwise, every litigant is responsible for its own litigation expenses, including the attorney's fees." *Id.* Although the trial court did not specify the statutory authority under which it awarded attorney fees, Defendants cited 12 O.S.2001 §§ 929, 930, 936 & 1141.5(B) as support for their attorney fees motion. We find none of these provisions authorize an award of attorney fees under the facts of this case.

¶ 15 Sections 929 and 930 authorize the award of "costs" to a successful defendant. However, "it is well settled that costs do not include attorney's fees except when a statute expressly provides for them." *Hicks v. Lloyd's Gen. Ins. Agency*, 1988 OK 97, ¶ 4, 763 P.2d 85, 86. Neither § 929 nor § 930 expressly provide for an award of attorney fees.

■ ¶ 16 Section 936 provides for an award of prevailing party attorney fees in certain enumerated civil actions. Defendants contend they are entitled to attorney fees under § 936 because Plaintiff's accounting claim constituted an "action to recover on an open account" or an action on a "contract relating to the purchase or sale of goods." Both of those provisions contemplate a *contract* between the litigants. *See Nicholson v. Thixton*, 1968 OK 175, ¶ 9, 448 P.2d 454, 455 (open account); *R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 1990 OK CIV APP 47, ¶ 55, 813 P.2d 14, 26 (contract for sale of goods). No such contract between Plaintiff and Defendants was alleged or proven in the present case.

¶ 17 We also reject Defendants' contention that attorney fees were authorized by § 1141.5(B). The Nonjudicial Marketable

Title Procedures Act (NMTPA), 12 O.S.2001 § 1141.1 *et seq.*, "sets forth detailed procedures to be followed where someone having an interest or claiming an interest in a parcel of real property and who believes there is some title defect or apparent cloud on the title to the real property, seeks to remedy same without having to institute a court action to quiet title." *Head v. McCracken*, 2004 OK 84, ¶ 17, 102 P.3d 670, 681. Where a "requestor" has prepared notice under the NMTPA requesting the "respondent" to take corrective action and the respondent refuses or fails to do so, § 1141.5(A) provides the requestor/plaintiff is entitled to recover attorney fees in a subsequent quiet title action that results in a judgment for the plaintiff which could have been accomplished through the curative instrument or corrective action identified in the notice. Section 1141.5(B) authorizes the recovery of attorney fees to a successful quiet title defendant who failed or refused to take the corrective action identified in a pre-lawsuit request from the plaintiff.

¶ 18 In the case at bar, Plaintiff did not send any request to Defendants pursuant to the NMTPA. Therefore, Defendants were not "respondents" under the Act. *See* § 1141.3(19) ("respondent" defined as a "person or entity to whom a notice is transmitted"). The only NMTPA notice identified in the record was a request sent to Plaintiff from the surface owner of the subject property, who is not a party to this action. A "requestor" is specifically defined in § 1141.2(18) as "any person or entity [or their agent or fiduciary] transmitting a notice to a respondent...." Defendants were not "requestors" within the meaning of the NMTPA. Accordingly, § 1141.5 is inapplicable to this case.

¶ 19 Lastly, Defendants argue they are entitled to attorney fees under the rationale of *Dean Bailey Olds, Inc. v. Richard Preston Motor Co.*, 2000 OK 89, 32 P.3d 816. There, the Supreme Court applied the exception to the American Rule recognized in *City Nat'l Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4, and affirmed an award of prevailing party attorney fees to the defendant where the plaintiff's action was deemed "onerous." The Court reiterated:

> ... one of the exceptions to the general rule recognized at common law and in modern practice, is the court's inherent equitable power to award attorney fees regardless of the fact that an award is not authorized by statute or contract, whenever overriding considerations, such as oppressive behavior on the part of a party, indicate the need for such a recovery.

*Dean Bailey Olds* at ¶ 15, 32 P.3d at 820, *quoting Owens*, 1977 OK 86 at ¶ 15, 565 P.2d 4. The trial court in the present case made no finding that Plaintiff's action was oppressive, onerous, vexatious or the like, and this Court is unwilling to so proclaim. On this basis, the trial court's award of attorney fees to Defendants must be reversed.

¶ 20 As its final proposition of error, Plaintiff contends the trial court erred in awarding as costs a payment to Defendant Richard Gouin for assistance in preparing the case. Because Plaintiff did not object to such cost before the trial court, we will not address this allegation on appeal. *Jones v. Alpine Inv., Inc.*, 1987 OK 113, ¶ 11, 764 P.2d 513, 515. That portion of the trial court's judgment regarding costs is affirmed.

¶ 21 AFFIRMED IN PART, REVERSED IN PART.

HANSEN, J., and JOPLIN, J., concur.